Opinion by
 

 Watkins, J.,
 

 This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Westmoreland County, Criminal Division, suppressing evidence. The order of suppression was entered perfunctorially without an opinion by the court below.
 

 
 *148
 
 The testimony of the police officer at the Suppression Hearing best portrays the history of the case: “It was on the 7th of October, 1970 at approximately 5:30 p.m., Pennsylvania Turnpike, mile Post 82.8, West Bound, Mount Pleasant Township, Westmoreland County. At this time I was assigned ‘coach-pupil training’ with Trooper Ronald Leonard. We were assigned routine patrol in the western area of our patrol division. I stopped the blue Cadillac for the purposes of issuing a warning for traveling 72 in a 65 zone. As we pulled the vehicle over, Officer Leonard approached the right side of the vehicle and I approached the driver’s side, the operator, William Prank Watkins, displayed to me at this time a valid operator’s license that was issued to him. As I was conversing with Mr. Watldns, the passenger, Juanita Marie Watldns, had her pocketbook facing toward me and it seemed she was attempting to conceal something from Officer Leonard that was at the right front door at this time. I looked in through the left window and I observed her pushing a leather holster down inside the handbag. I couldn’t observe any weapon, I could readily distinguish. I could only see the holster portion with the snap buckle. I then walked over to the right side, walked around the Cadillac to the rear, and asked Mrs. Watldns to remove her hand from the handbag. She refused. I reached in the window getting ready to grab the handbag when she pulled her hand out, then threw a manila envelope out and said, ‘Here is this what you want?’ Q. Bo you have, Trooper, the manila envelope that was thrown at you? A. This manila envelope was a large manila envelope. It was sealed at the top with a gum label. When it was thrown out from her pocketbook to me, it Avas in this position. (Indicating.) Q. And where did it land? A. I caught it. She just threw it out the window. Q. What happened after that? A. At that time, Trooper Leonard was behind me and I was concerned about
 
 *149
 
 the holster I observed in her pocketbook. Her hand was still in the pocketbook. I handed the envelope to Officer Leonard and I then grabbed the bag and opened the bag. Inside was a holster containing a weapon. Q. You have that in Court with you today? A. Yes, sir. This is the holster that was observed. Upon seizing and opening the neck, it contained this weapon. Both occupants at this time were directed to exit by me. . . . Juanita exited upon my direction; however, the driver, William Frank Watkins refused after being requested twice. I became overly suspicious and I drew my service revolver and even then he was reluctant to exit. At this time, he was taken to the rear of the vehicle and padded down. The manila envelope was opened by me and found to contain two small packs inside. One very small pack which is item Number One and one larger pack which is item Number Two. They were opened by me and they were found to contain white powder which I identified at the scene as pure heroin or cocaine. They were both verbally advised of their Bights and they were both requested by me to make no statements. The vehicle— The weapon was then checked by me and found to be a 22 caliber tear gas pistol loaded with tear gas cartridges. At this time we were preparing to take the two defendants to the magistrates for preliminary arraignment. Mr. Watkins expressed a concern about a mink coat that was in the trunk of his vehicle. Mr. Watkins opened the trunk; I requested him to do so to verify . . . to cover us should it be missing. He opened it up and there was a mink coat laying across the tire wall. Directly across in front of the mink coat, there was a brown paper bag sitting in the trunk of the vehicle and almost exactly the same condition it is now. It was opened at the top, the top was all ripped. I looked inside the bag from outside the trunk and I observed a strainer and three measuring spoons. One clear bottle and one clear vial of which I suspected at this time as
 
 *150
 
 being used for the purpose of cutting and mixing narcotics.”
 

 The defendants were placed under arrest for violation of “The Drug, Device and Cosmetic Act”. We agree with the Commonwealth that the search and seizure in question was reasonable both at its inception and as conducted. All of the items which the Commonwealth sought to introduce into evidence and which were seized from the defendants, were discovered as the result of the trooper’s observation of Mrs. Watkins and her actions with respect to the holster in her purse. There certainly exists an authority to permit a reasonable search for the protection of a police officer where he has reason to believe he is dealing with an armed and dangerous individual regardless of whether he has probable cause to arrest the individual for a crime.
 
 Terry v. Ohio,
 
 392
 

 The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable and prudent man in the circumstances would be warranted in believing that his safety and that of others was in danger. In the instant case, the officer stopped the Watkins car for a vehicular violation and the officer observed a leather holster being hidden in Mrs. Watkins’ pocketbook. She was sitting in the rear seat of the car. This is a great deal more than suspicion and a reasonably prudent officer could not ignore the danger that existed not only to himself but to the officer at the rear of the car. When asked to remove her hand from her pocketbook, she threw a manila envelope at him and said: “Here, is this what you want?”. The receipt of this manila envelope was not the result of a search, but was given to the officer by the defendant in the hope that he would not proceed further in seeking the weapon. He was then justified in seizing the
 
 *151
 
 handbag and removing the holstered weapon which was a loaded tear gas gun.
 

 As to the drugs discovered in the trunk of the car; this, too, was not the result of a search, but the result of finding contraband in plain view in the trunk of the car as the result of a request by the defendant that he look to the safety of a fur coat in the trunk. They had been warned of their rights and were about to be taken to the office of the magistrate when the question of the safety of the mink coat in the trunk came up. The defendant opened the trunk and the mink coat was on the tire and there was also a brown bag in the trunk in plain view, opened at the top and tom on the side so that the officer could observe the contents from outside the trunk and which was described by the officer as drag paraphernalia. This material clearly falls within the “plain view doctrine”.
 
 Coolidge v. New
 
 Hampshire, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). The seizure of this material in plain view incidental to an arrest may be seized without a warrant.
 

 The appellees make much of the use of his gun by the officer. When Mr. Watkins refused to get out of the car upon request of the officer which was subsequent to the finding of the holstered weapon, the officer drew his revolver and again requested Mr. Watkins to get out of the car. The explanation of the drawing of his revolver was that after finding the first weapon, he was suspicious that Mr. Watkins might also be armed. This was a reasonable precaution.
 

 The order of suppression is reversed and the case remanded for trial.