364 A.2d 459
**COMMONWEALTH of Pennsylvania,
Appellant,**

**v.**

**Ritchee HOUSER.**

Superior Court of Pennsylvania.
Sept. 27, 1976.

Richard J. Orloski, Asst. Dist. Atty., Allentown, for appellant.

Victor F. Cavacini, Allentown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

Once again we are asked to rule on the propriety of a confrontation between a police officer and an individual which resulted in the seizure of incriminating evidence. On January 9, 1975 at approximately 4:45 a. m. the Allentown Police Department received a call reporting a burglary. Officers Steckel and Boyer were assigned to investigate the crime. Failing to find any suspects at the scene of the burglary, the officers decided to surveil the immediate neighborhood in their paddy wag-

on. Approximately six blocks from the site, the officers came upon two young men. Both were known to the police as being on probation for burglary. As the police approached, one of them ran but the other, Ritchee Houser, appellee in this case, remained. Officer Boyer, who confronted appellee, testified at the suppression hearing that he observed a bulge in appellee's jacket pocket in the shape of a handgun. Fearing for his safety, Officer Boyer asked appellee what was in his pocket. According to Officer Boyer, "he [appellee] didn't give me an answer and I wasn't going to let him go into his pocket and pull out whatever it was to tell me—you know, to show me so I just stuck my hand in his pocket." Notes of Testimony of the Suppression Hearing at 22. In the pocket Officer Boyer found $20.28 in change, the amount allegedly taken in the burglary. Appellee was arrested and charged with the crime. Prior to trial, appellee challenged the seizure of the money claiming that it was the result of an illegal search. The court below agreed and suppressed the evidence. Accordingly, the Commonwealth has appealed.

The lower court held that Officer Boyer lacked the probable cause to make a valid arrest of appellee, but found that he did have the right under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to conduct an investigative detention of appellee with a protective search of his person for weapons. However, according to the lower court, the protective search should have been limited to a casual pat-down of the suspect and Officer Boyer exceeded the scope of the *Terry* frisk by immediately inserting his hand into appellee's pocket.

We find that Officer Boyer acted reasonably under the circumstances and reverse the order of the court below suppressing the evidence discovered by his search. While it is true that where probable cause to arrest is absent, a search of a suspect must be limited to

one of protection for the officer, it does not follow that a police officer must perform a useless pat-down of an individual when his senses have already disclosed that a weapon may be possessed at a certain place on the suspect's person. We have been unable to find any authority that requires a pat-down when an apparent weapon has already been discovered. On the other hand, there is authority that indicates that a police officer may search *directly* for the weapon when he has reason to believe that it is on a certain part of the individual's body.

The court below relied extensively on *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *Sibron*, however, is not on point because in that case there was no testimony that the police officer feared for his safety and searched the suspect's pockets for his self-protection. Nevertheless, there is dicta in *Sibron* which indicates that a protective search must be limited in nature. Comparing the facts of *Sibron* with *Terry v. Ohio*, supra the United States Supreme Court noted:

> "The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. *Only when he discovered such objects* did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin." *Sibron v. New York*, supra at 65, 88 S.Ct. at 1904. (Emphasis added.)

We can see no purpose in patting down a suspect when the officer has *already discovered* an apparent weapon on the individual's person. In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) the United States Supreme Court upheld a police officer's protective search of a suspect. Although probable

cause to arrest was lacking, the officer in that case was informed that "an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist." *Id.* at 145, 92 S.Ct. at 1922. After the officer approached the car, he asked the individual to open the door. Instead, the suspect rolled down the window. The officer immediately reached inside the car and removed a revolver from the suspect's waistband.

In *Adams v. Williams*, supra, as in the case before us, the officer failed to pat-down the suspect but conducted a limited search where he had reason to believe a weapon was present. To require a police officer to frisk an individual when he already has reason to believe that a handgun is in a certain location on the suspect's body would only increase the risk of harm to the officer. Furthermore, a search limited to the area where the weapon is believed to be is in our view most reasonable under the circumstances.

Where, as in the present case, a crime has been committed, a suspect has been located, and the officer reasonably believes that the suspect has a handgun in his coat pocket, we hold that a direct search of the pocket for the protection of the officer is proper.

Order reversed.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

SPAETH, Judge (dissenting):

I disagree with the majority's holding that "[w]here . . . a crime has been committed, a suspect has been located, and the officer reasonably believes that the suspect has a handgun in his coat pocket, . . . a direct search of the pocket for the protection of the officer is proper." 243 Pa.Super. at 85, at 461.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968), the Court said:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing [1] of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30, 88 S.Ct. at 1884.

In arriving at this conclusion, the Court emphasized that even a "frisk" "constitutes a severe, though brief, intrusion upon cherished personal security." *Id.* at 24–25, 88 S.Ct. at 1882. Thus, the general rule is that an officer *must* frisk *first* before he may make any further

1. Other language in *Terry* makes it clear that the court is referring here to a "frisk" and not to any further search of outer clothing.

   For example, the Court states that the search must . . . be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

   The scope of the search in this case presents no serious problem in light of [this standard]. Officer McFadden *patted down* the outer clothing of petitioner and his two companions. *He did not place his hands in their pockets or under the outer surface of their garments until he felt weapons,* and then he merely reached for and removed the guns. . . . Officer McFadden confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find. 392 U.S. at 29–30, 88 S.Ct. at 1884. (Emphasis added).

intrusion. [2]  The language used by the majority, it seems to me, is inconsistent with this rule.

*Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), I take to establish a narrow exception to the *Terry* rule: when special circumstances warn the officer that the "frisk" may not be adequate to insure his safety, he may make an immediate and direct invasion of the suspect's clothing and person—limited to such action as necessary to seize the suspected weapon. The question, therefore, is whether such special circumstances are to be found in the present case.

The majority appears to rely solely on the bulge in appellee's pocket, a bulge the size of a small or larger handgun. [3]  I do not consider this sufficient justification for a search of the pocket without a preliminary frisk. If it were, it would follow that most bulges in suspects' clothing would justify searches, since most bulges could be said to suggest the presence of some weapon.

I have nevertheless concluded that this search might be justified by an additional circumstance. The officer asked appellee, immediately after stopping him, what he had in his pocket, and appellee gave no answer. N.T. at 21–22. Silence as to the nature of a big bulge in one's pocket might be threatening—just enough to bring the case within *Adams.*

Despite this conclusion I am unable to join the majority because of a procedural difficulty. The hearing judge did not mention appellee's silence in his recitation

---

2. This is also the rule adopted by the Model Code of Pre-Arraignment Procedure. *See* § 110.2(4), and comment thereon, at 11, 278–80 (Proposed Official Draft, 1975).

3. The majority states that the officer testified that he observed a bulge "in the shape of a handgun." Slip opinion at 1. I think this an inaccurate inference. The officer testified:

> He had a big bulge in his pocket. So I just searched him to see if it was a weapon. It looked like a weapon, because he had a big bulge in his pocket.

N.T. at 21.

of the facts. Perhaps he did not believe the officer's testimony, in which case "[i]t is not for us as an appellate court to disagree; the judge's finding binds us, *Commonwealth v. Bruno,* 466 Pa. 245, 255, 352 A.2d 40, 45 (1976) (citing *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972))". *Commonwealth v. Scavincky,* 240 Pa.Super. 550, 562, 359 A.2d 449, 455 (1976) (dissenting opinion by Spaeth, J.). It is equally possible that the judge did not consider the silence relevant—a judgment that would indicate a failure to understand and apply the *Adams* gloss on the *Terry* rule, and thus an error of law requiring reversal. This guesswork could and should be avoided by requiring more complete findings. Pa.R.Crim.P. 323(i).

I would therefore reverse and remand for complete findings, to be followed by a disposition consistent with the principles of law I have set forth above.

HOFFMAN, J., joins in this opinion.