485 A.2d 790

**COMMONWEALTH of Pennsylvania**

**v.**

**Edward CAVALIERI, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1984.

Filed Dec. 5, 1984.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTEMURO, CERCONE and HESTER, JJ.

CERCONE, Judge:

On February 3, 1982, appellant was arrested and charged with possession of a controlled substance. Immediately prior to trial in the Municipal Court of Philadelphia, a motion to suppress was litigated and denied. Appellant was then found guilty and sentenced to pay a fine of $150.00 plus costs. Appellant thereafter petitioned the Court of Common Pleas of Philadelphia County for a writ of *certiorari* asserting that his motion to suppress had been improperly denied. The writ of *certiorari* was denied and this appeal ensued. We reverse.

It is well settled that:

Our function on review of an order denying a motion to suppress is to determine whether the factual findings of the lower court are supported by the record. In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evi-

dence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Trenge,* 305 Pa.Super. 386, 389, 451 A.2d 701, 703 (1982). Viewed in light of these principles, the record reveals the following.

On February 3, 1982, police officer Roy Wright and his partner responded to a radio call of a disturbance at the Parker Hotel in Philadelphia. When they arrived, Wright remained in the foyer where appellant was standing while his partner proceeded into the lobby to speak with the manager. Officer Wright noticed that appellant was wearing a jacket with bulging lower pockets into which he continuously moved his hands in and out. When questioned as to his purpose for being in the foyer, appellant responded that he was waiting for a narcotics officer. During the questioning, Wright's partner informed him that appellant had refused the manager's request to leave the premises. After appellant obeyed Wright's order to remove his hands from his pockets, the officer then reached directly into appellant's pockets to check for weapons. The officer found a vial of pills, a pack of cigarettes and a large wad of tissue. Officer Wright then frisked appellant's outer clothing for weapons. No weapons were found and the pills— subsequently analyzed and determined to be controlled substances—provided the evidence for appellant's arrest [1] and conviction.

In the seminal case of *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that society's interest in detecting and preventing crime permitted a law enforcement officer to stop and question an individual concerning possible criminal behavior notwithstanding the absence of proba-

---

1. The record does not disclose the exact time this incident occurred. Officer Wright did testify, however, that his tour of duty was 11:00 p.m. to 7:00 a.m. The arrest report states that appellant was arrested at 1:10 a.m.

ble cause to arrest. The Court in *Terry* further recognized that a policeman conducting such an investigatory stop may in certain circumstances take appropriate measures to neutralize the threat of physical harm to himself or others. *Id.* Noting that the propriety of each "stop-and-frisk" case would have to be decided on the basis of its own facts, the Court held:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing. in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.,* 392 U.S. at 30, 88 S.Ct. at 1884–85.

■ In our view, resolution of the instant case turns upon the question of whether it was reasonable for officer Wright, under the circumstances he encountered, to reach directly into appellant's bulging pockets without first frisking or patting him down.[2] "And in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first

2. There is no doubt that a seizure and search occurred when appellant was ordered to remove his hands from his pockets and officer Wright immediately reached into the pockets. The record is not clear, however, on the question of whether appellant's freedom of movement had been restrained in any manner by officer Wright prior to his search for weapons. Indeed the suppression court acknowledged that appellant had not committed any crime prior to the search. (N.T. 18–19). Hence we will assume, as did the Court in *Terry*, "that up to that point no intrusion upon constitutionally protected rights had occurred." *Id.* 392 U.S. n. 16 at 19, 88 S.Ct.·n. 16 at 1879.

place." *Id.*, 392 U.S. at 19–20, 88 S.Ct. at 1878–79. In other words, we must decide whether the search and seizure was reasonable both at its inception and in the manner in which it was conducted. Both inquiries must "be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Id.* 392 U.S. at 21–22, 88 S.Ct. at 1879–80. Furthermore, "... in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* 392 U.S. at 21, 88 S.Ct. at 1880.

■ Instantly, we are of the opinion that regardless of whether officer Wright was justified in initiating a protective search of appellant, he exceeded the permissible scope of such a search when, under the circumstances of this case, he immediately reached into appellant's pockets without first conducting a pat-down or frisk of appellant's clothing.

In *Terry, supra,* the Court declined to establish the limitations which the Fourth Amendment places upon protective searches. Instead, the Court stated that these limitations will have to be developed on a case by case basis. The Court did note, however, that a *Terry* type protective search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments of the assault of the police officer." *Id.* 392 U.S. at 29, 88 S.Ct. at 1884. In approving the scope of the search conducted in *Terry*, the Court observed:

Officer McFadden patted down the outer clothing of petitioner and his two companions. He did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons, and then he merely reached for and removed the guns. He never did invade Katz' person beyond the outer surfaces of his clothes, since he discovered nothing in his pat-down which might have been a weapon.

*Id.* 392 U.S. at 29–30, 88 S.Ct. at 1884. *See also Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

■ This is not to say, however, that a *Terry* protective search must always commence with a frisk or pat-down of the suspect. In *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), a reliable informant advised an officer that an individual seated in a car located in a high crime area at 2:15 a.m., was carrying narcotics and had a gun at his waist. The officer approached the car and asked the suspect to step out. When the suspect disobeyed and merely rolled down his car window, the officer immediately reached through the window and removed an unseen gun from the suspect's waistband. In approving the officer's actions, the Court explained:

> While properly investigating the activity of a person who was reported to be carrying narcotics and a concealed weapon and who was sitting alone in a high-crime area at 2:15 in the morning, Sgt. Connolly had ample reason to fear for his safety. When Williams rolled down his window, rather than complying with the policeman's request to step out of the car so that his movements could more easily be seen, the revolver allegedly at Williams' waist became an even greater threat. Under these circumstances the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable.

*Id.* 407 U.S. at 147–48, 92 S.Ct. at 1924 (footnote omitted). We believe that a preliminary pat-down or frisk was excused by the Court in *Adams v. Williams* for two reasons. First, the investigating officer had reliable information that the suspect was carrying a concealed weapon in his waistband. Second, and more importantly, the suspect's failure to comply with the officer's request to exit the car, prevented the officer from performing a frisk or pat-down without placing himself in a much more dangerous position in relation to the suspect. *See* W.R. LaFave, SEARCH AND SEIZURE A TREATISE ON THE FOURTH AMEND-

MENT, Section 9.4, p. 125 (1978).   Thus it is settled that, under appropriate circumstances, an investigating officer may dispense with a preliminary frisk and conduct an immediate search.

   ■ Instantly, the Commonwealth, relying on *Adams v. Williams, supra,* and our decision in *Commonwealth v. Houser,* 243 Pa.Super. 80, 364 A.2d 459 (1976), contends that officer Wright acted reasonably in reaching directly into appellant's pockets without first performing a frisk. We are constrained to disagree.   In our view, the circumstances encountered by the investigating officers in those cases are quite different than those in the case at bar.

   In *Commonwealth v. Houser, supra,* the investigating officers responded to a call reporting a burglary.   Although no suspects were found at the scene, the officers did find in the vicinity two men who were known to them as being on probation for burglary.   As the police approached, one of the men fled.   One of the officers confronted the remaining individual and observed a bulge in his jacket pocket in the shape of a gun.   When the individual failed to respond to the question of what was in his pocket, the officer reached directly into the pocket and found $20.28 in change which was the amount alleged to have been taken in the burglary. In concluding that the officer acted reasonably under the circumstances, we held, relying upon *Adams v. Williams, supra,* that "[w]e can see no purpose in patting down a suspect when the officer has *already discovered* an apparent weapon on the individual's person." *Commonwealth v. Houser, supra,* 243 Pa.Super. at 83, 364 A.2d at 461 (emphasis in original).

   The circumstances, as testified to by the investigating officer, in the case at bar, are in sharp contrast to those of *Adams v. Williams* and *Houser.*   Here, the officers responded to a call of a disturbance at a hotel.   Upon arrival, they observed no disturbance, but rather appellant standing alone in the foyer of the hotel.   While one officer entered the lobby to talk with the manager, the other asked appellant what he was doing there.   Appellant replied that he

was waiting for a narcotics officer. At some undetermined point, the officer's partner advised him that appellant had refused the manager's request that he leave the hotel. Noticing that the pockets on appellant's jacket were bulging and that he was continuously placing his hands in and out of those pockets, the officer ordered appellant to remove his hands from his pockets. After appellant obeyed this order, the officer reached directly into appellant's pockets and extracted a plastic vial containing pills. The officer then frisked appellant for weapons.

Conspicuous by its absence, is any testimony or evidence whatsoever that the bulge in appellant's pockets appeared to resemble the shape of a weapon. Nor did the radio information indicate that anyone at the hotel was believed to be in possession of a weapon. And although officer Wright expressed some concern over the fact that he was alone with appellant in the foyer, he never testified that he suspected appellant was armed and dangerous. The officer simply explained: "The lower pockets of the jacket kept bulging and he kept taking his hands and sticking them in and out of his pockets. It was just he and I in the foyer of the hotel. I asked him to remove his hands from his pockets and I checked his pockets for weapons." (N.T. 7–8). Nor can it be said that appellant was anything but responsive [3] and cooperative [4] with the officer. *Cf. Adams v. Williams, supra; Commonwealth v. Houser, supra.*

In sum, in light of the United States Supreme Court's admonition that even a frisk or pat-down of the outer clothing "constitutes a severe, though brief, intrusion upon cherished personal security ...." *Terry v. Ohio, supra,* 392 U.S. at 24–25, 88 S.Ct. at 1881. And our own Supreme Court's expressed policy "of scrupulously adhering to the

**3.** As previously noted, when asked what he was doing in the foyer appellant answered that he was waiting for a narcotics officer. The officer did not find this explanation implausible as he "figured [appellant] had some information for a narcotics officer." (N.T. 13).

**4.** When requested to stop placing his hands in and out of his pockets, appellant promptly obeyed. *Cf. Commonwealth v. Watkins,* 222 Pa.Super. 146, 292 A.2d 505 (1972).

narrow scope of the [Terry] exception." *Commonwealth v. Lovette,* 498 Pa. 665, 676, 450 A.2d 975, 980 (1982). *See also Commonwealth v. Anderson,* 481 Pa. 292, 392 A.2d 1298 (1978). We hold that regardless of whether officer Wright was justified in conducting a protective search of appellant in the first place, the officer far exceeded the scope of a permissible search given the absence of any facts that would reasonably warrant the conclusion that the officer was justified in immediately reaching into appellant's pockets. Accordingly, the evidence seized as a result of this search should have been suppressed.

The judgment of sentence is reversed and a new trial is ordered.

HESTER, J., filed a dissenting statement.

HESTER, Judge, dissenting:

I dissent. I would affirm on the Opinion of Judge Ned L. Hirsch of the court below.