## Commonwealth v. Durkin

*David Zellis, assistant district attorney,* for the commonwealth.

*William L. Goldman Jr.,* for defendant.

BIESTER, Jr., *J.,* March 21, 1989 — Defendant Ernest Durkin is charged with possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of drug paraphernalia. These charges arose out of a search of his person after a traffic stop on May 7, 1988 in Bensalem Township. At the time of the stop defendant was found to be in possession of three grams of methamphetamine and over $9,000 in cash. On November 14, 1988 a hearing on defendant's motion to suppress was held before this court. We now enter the following order.

Defendant was stopped on May 7, 1988 by Bensalem Township Police Officer Knowles. Officer Knowles issued a traffic citation to defendant for misuse of a vehicle registration and operation of an unregistered vehicle. The vehicle identification number on the car was registered to a person other

than the person whom defendant had originally named to the officer. After back-up officers arrived at the scene, Officer Knowles asked the defendant to exit the vehicle. Officer Knowles intended to check the vehicle identification number on the pollution control sticker inside the dashboard of the car and compare it to the VIN on the driver's side door in order to investigate the possibility of the vehicle being stolen. When defendant exited the vehicle he was visibly shaken, his hands were trembling, he was stuttering and he was sweating profusely. Officer Knowles asked defendant to place his hands on the police vehicle roof so that the officer could pat him down. Defendant complied. The officer stated that when defendant put his hands on the police vehicle he then observed large bundles in defendant's pants pockets. He noted that part of those bundles was U.S. currency. The officer began to pat defendant down and move the bundles around to see if there were any possible weapons below them in the pockets. At that point defendant asked the officer not to disturb the bundles and to keep them in the pockets where they were. The officer testified that that statement raised suspicion in his mind. He did not, however, remove the bundles from defendant's pocket. He then looked into the vehicle and observed that the back seats had been pulled back, lifted up. He also testified that he knew defendant from past arrests and had knowledge that during some of those arrests weapons had been confiscated. The officer then testified:

"I patted him down and from the outside I patted what is, I always call it the key pocket of a pair of jeans, the little pocket just below the belt. From my experience as a narcotics investigator and my training and what had been related to me by my training and by knowing persons I had arrested who had

given me advice during my times of making buys, that, this is another area that is, most often with small amounts of methamphetamine, is where it's packaged, in this pocket, for two reasons. Methamphetamine will melt down if it's in a pants pocket. If it's down close to your body, it will dissolve, and I patted this area and I felt from the outside rubbing the pocket there was a hard rock-like substance and it was packaged in probably plastic. I turned him around and I could see the plastic. I could not see the substance."

After feeling the rock-like substance encased in plastic in defendant's key pocket, Officer Knowles testified that he then believed the defendant had methamphetamine in his pocket, turned him around and removed the plastic bag from the pocket. This plastic bag did contain a rock-like substance which was later confirmed to be methamphetamine. He did state that when he turned defendant around he could see the plastic in the pocket but he could not see the substance. He testified that he removed the substance from the pocket because at that point he felt that it was probably methamphetamine. Officer Knowles also testified that after shifting the large bulges around in defendant's pants pockets he had satisfied himself that defendant had on his person no weapons that he could "readily get to quickly."

Defendant has moved to suppress the methamphetamine removed from the key pocket. The basis for the original car stop is not challenged here. It is clear that a brief investigatory detention was appropriate under the circumstances. It is also not contested that the patdown for concealed weapons once defendant was asked to leave the vehicle was also appropriate in order to ensure Officer Knowles' safety at the time. The sole issue is whether the officer's conduct in investigating the contents of the

key pocket and then removing the glassine bag constituted an improper search and seizure.

Under the Fourth Amendment it has been held that a policeman may conduct a limited search of an individual's clothing, regardless of whether he has probable cause to arrest, in an attempt to discover concealed weapons, where he has reason to believe that the individual may be armed and dangerous. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed. 2d 889 (1968).

This form of search is strictly circumscribed and must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. *Id.* at 26, 88 S.Ct. at 1882. Such a search is not justified by any need to prevent the disappearance or destruction of evidence of a crime. *Id.* at 29, 88 S.Ct. at 1994. The sole justification of the search is the protection of the officer. *Id.* Evidence may not be introduced it if was discovered by means of a seizure and search not reasonably related in scope to the justification for their initiation. *Id.* "Purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed. 2d 612 (1972).

As if to underscore the limited nature of the *Terry* patdown exception, in a companion case decided the same day the U.S. Supreme Court excluded herion discovered during a brief detention and frisk. *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 917 (1968). In *Sibron,* the police had observed defendant speaking with several known narcotics addicts. The officer stopped defendant and said to him "you know what I'm after." As defendant reached into his pocket, so did the officer, removing glassine bags containing heroin. The court stated:

"Even assuming arguendo that there were adequate grounds to search [defendant] for weapons, the nature and scope of the search by [the officer] were so clearly unrelated to that justification as to render the heroin inadmissible. ... He was looking for narcotics and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception — the protection of the officer by disarming a potentially dangerous man." *Sibron,* 392 U.S. at 65, 88 S.Ct. at 19044.

"Our own Supreme Court has an expressed policy of scrupulously adhering to the narrow scope of [the *Terry*] exception." *Commonwealth v. Cavalieri,* 336 Pa. Super. 252, 260-1, 485 A.2d 790, 794 (1984), citing *Commonwealth v. Lovette,* 498 Pa. 665, 676, 450 A.2d 975, 980 (1982). The standard for *Terry* patdowns in Pennsylvania was first enunciated in *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). "Even if probable cause to arrest is absent, the police officer may legitimately seize a person . . . and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, *if* the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him to reasonably conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." *Hicks* at 158, 253 A.2d at 279. (emphasis in original) See also *Commonwealth v. Lagana,* 517 Pa. 371, 376, 537 A.2d 1351, 1354 (1988). It is clear that a patdown for weapons is appropriate when an officer stops a car for a traffic violation, requests the driver to step out of the car and "becomes aware of a situation which may be dangerous to his person."

*Commonwealth v. Mimms,* 232 Pa. Super. 486, 490, 335 A.2d 516, 518 (1975), reversed 471 Pa. 546, 370 A.2d 1157, reversed sub nom. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed. 2d 331 (1977). Of course the narrow basis of the frisk is "strictly and solely for the officer's own protection." *Id.*

We find that it was appropriate for Officer Knowles to frisk Mr. Durkin for weapons after he asked him to step out of the car, given defendant's nervousness and Officer Knowles' knowledge that defendant had a history of carrying weapons. We also find that once he had discovered that the bulges in Mr. Durkin's pockets were wads of bills the officer was reasonably satisfied that defendant was not carrying a weapon. In fact, he testified that after shifting the wads of bills around in defendant's pants pockets he was satisfied that defendant had on his person "no weapons that he could readily get to quickly."

Once he was satisfied that defendant had no weapons on his person the search should have ended, unless the officer, at that point in time, had probable cause to arrest defendant. "Where probable cause to arrest is absent, the search of a suspect must be limited to a search of the suspect's person for the protection of the officer." *Commonwealth v. Carter,* 334 Pa. Super. 369, 373, 483 A.2d 495, 497 (1984). An officer may not conduct a search of defendant's clothing in order to discover contraband where none of the items found on defendant's person could reasonably have been mistaken for weapons. *Id.* (The officer in the *Carter* case discovered a Walkman radio, two watches, $44 in change and miscellaneous cash during the search of defendant's person. This search was held to have been unreasonable). A search of a juvenile stopped while running down a street, who gave a name other than

that on his school identification, was also found to have exceeded the permissible scope as "it stretches the bounds of reason to believe that in a *Terry* patdown, a heart-shaped charm would reasonably be mistaken for a dangerous weapon." *In the Interest of Dixon,* 356 Pa. Super. 105, 108, 514 A.2d 165, 167 (1986).

The Pennsylvania Superior Court has also found that a search exceeded the permissible scope where the officer reached into the appellant's pockets without first conducting a patdown or frisk. *Commonwealth v. Cavalieri, supra.* The court noted that "conspicuous by its absence is any testimony or evidence whatsoevver that the bulge in the appellant's pockets appeared to resemble the shape of a weapon. . . . [N]or can it be said that appellant was anything but responsive and cooperative with the officer." *Cavalieri* at 260, 485 A.2d at 794. Similarly, there was no testimony that the article felt in Mr. Durkin's pocket resembled a weapon. It would be unreasonable to find otherwise. There is no evidence that Mr. Durkin was anything but cooperative. Furthermore, Officer Knowles stated on direct examination that the reason he decided to pat down the key pocket was because he knew methamphetamine is often kept there. As in *Sibron v. New York, supra,* the officer was looking for drugs, and he found them. "Even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security." *Terry v. Ohio, supra.*

We are aware of no other jurisdiction where a court has condoned the use of a *Terry* patdown to search for evidence of an independent crime. Cf. *State v. Hobart,* 94 Wash. 2d 437, 617 P.2d 429, (1980). The Washington Supreme Court found that where, during a patdown for weapons, no weapons

were found but the officer felt two spongy objects which he concluded were balloons containing narcotics, further search exceeded the permissible scope of the patdown. *Id.* Where, during a patdown of the subject in which no weapons were found, but an officer felt a small cylindrical object which he suspected to be marijuana, the Florida District Court of Appeal held the seizure of the object to be impermissible. *Dunn v. State,* 382 So.2d 727 (Fla.App. 1980). In California, during a patdown an officer felt "a little lump" inside suspect's left front pocket. The suspect pushed the officer's hand away, stating "get your hand away from me. You can't search there." Thinking it was a weapon, the officer extracted a bag of marijuana. The California Supreme Court in that case found that the officer's belief that the soft object was a weapon was unreasonable. Holding that the officer did not have probable cause to arrest immediately prior to searching the interior of the pocket, the marijuana was inadmissible at trial. *People v. Collins,* 1 Cal. 3d 658, 83 Cal. Rptr. 179, 463 P.2d 403 (1970). The U.S. Court of Appeals for the Second Circuit excluded cocaine discovered folded in a $10 bill in a suspect's pocket. The officer claimed that he feared the presence of a knife or a razor blade. The court found that "it strains credulity to suppose that when [the officer felt the suspect's pocket] . . . he suspected anything other than the possible presence of cocaine." *United States v. DelToro,* 464 F.2d 520, 522 (2d Cir. 1972). Similarly, given Officer Knowles' experience and knowledge as a police officer, we do not accept the commonwealth's contention that he at any time believed the rock-like substance in the pocket was a razor blade or a weapon. Our research has disclosed only one case in another jurisdiction where a soft object was felt during a weapons patdown and the

intrusion into the pocket was upheld as reasonable. However, in that case the officer had already seized another bag of marijuana from the defendant which was in plain view. *State v. Ludtke,* 306 N.W. 2d 111 (Minn. 1981).

Further search of defendant's pockets would have been permissible as a search incident to a lawful arrest if the officer, before intruding into the key pocket, had probable cause to arrest defendant. "Probable cause to arrest depends upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed. 2d 612 (1972). In evaluating whether Officer Knowles had probable cause to arrest we may not take into account that he ultimately discovered methamphetamine on defendant's person. "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Sibron v. New York, supra.*

Officer Knowles knew that defendant had been stopped for a traffic violation, that he had a history of arrests for narcotics possession and carrying concealed weapons, that defendant was visibly shaken and sweaty and that he was carrying several large bundles of cash. The cash however, was not removed and counted until after the methamphetamine had been found and defendant was placed under arrest. It was then discovered to amount to $9,770. Defendant made the statement to the officer not to mix up the piles of money in his pockets. Defendant, though nervous, was cooperative in all respects with the officer and before the officer

intruded into the key pocket the officer was satisfied that the defendant was carrying no weapons. We do not find, under these circumstances, that Officer Knowles had probable cause to arrest. "Although the circumstances may have looked suspicious . . . even a strong reason to suspect will not adequately substitute for probable cause as grounds for an arrest or search." *Commonwealth v. Pinno,* 433 Pa. 1, 5, 248 A.2d 26, 28 (1968).

Although the commonwealth asserts probable cause to arrest as a basis for the pocket search, its brief does not stress or develop these contentions beyond the bold assertion of them. Rather, most of its brief after dealing with the specific *Terry* issue addresses exigent circumstances. The commonwealth appears to be contending that the extension of the patdown was permissible due to the exigent circumstances existing at the time. The "exigent circumstances" doctrine is a recognized exception to the warrant requirement of the Fourth Amendment. "Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, . . . or there existed a threat of physical harm to police officers or other innocent individuals." *Commonwealth v. Hinkson,* 315 Pa. Super. 23, 27, 461 A.2d 616, 618 (1983). However, a prerequisite to search under the exigent circumstances doctrine is that there must be probable cause to search in the first place. *Id.* at 28, 461 A.2d at 618.

Like the exigent circumstances doctrine, the *Terry* patdown is an exception to the Fourth Amendment warrant agreement. However, the patdown for weapons is permissible where an officer has less than probable cause. The patdown, therefore, is strictly circumscribed and limited to that necessary for the discovery of weapons. *Terry v. Ohio, supra.*

The exigent circumstances doctrine does not apply here because the fact that defendant was stopped for a traffic violation, was nervous, had a criminal history and then-uncounted sums of money on his person does not give rise to probable cause to believe that he had committed or was committing a criminal offense. See *Adams v. Williams, supra.* The commonwealth appears to be asking us to extend the *Terry* doctrine to include an exigent circumstances exception. That we cannot do.

We note that our ruling deals only with the supression of this evidence in a criminal case but does not resolve the disposition of any contraband seized including the $9,000.

In granting defendant's motion to suppress the results of the pocket search we acknowledge the difficulty of Officer Knowles' position and appreciate the candor with which he explained his actions to this court. It is clear that under the limited *Terry* exception to the Fourth Amendment, the officer couuld not continue searching defendant's person once he was satisfied that defendant carried no weapons. However, it is also clear that the officer's suspicion that defendant was carrying drugs was not unreasonable. What would we have had the officer do under the circumstances? That is a fair question. Justice Scalia recently responded to that question in *Arizona v. Hicks,* __ U.S. __, 107 S.Ct. 1149, 1155, 94 L.Ed. 2d 347 (1987):

"The answer depends, of course, upon whether he had probable cause to conduct a search. . . . If he had, then he should have done precisely what he did. If not, then he should have followed up his suspicions, if possible, by means other than a search. . . . It may well be that, in such circumstances, no effective means short of a search exist. But there is nothing new in the realization that the Constitution

sometimes insulates the criminality of a few in order to protect the privacy of us all."

## ORDER

And now, March 21, 1989, defendant's motion to suppress the methamphetamine seized by Bensalem Township police on May 7, 1988 is hereby granted.