J-S67043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES STOVER | : | |
| | : | |
| Appellant | : | No. 3774 EDA 2016 |

Appeal from the Judgment of Sentence November 18, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011253-2015

BEFORE: GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:          **FILED NOVEMBER 17, 2017**

Appellant, Charles Stover, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions of persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia.[1] We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts of this case. Therefore, we have no reason to restate them. Procedurally, on November 13, 2015, the Commonwealth charged Appellant with persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets or public property in

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

_____

*   Former Justice specially assigned to the Superior Court.

Philadelphia. Appellant filed an omnibus pre-trial motion on January 8, 2016, which asked the court to suppress the firearm seized from Appellant's person on October 24, 2015. Appellant's suppression motion averred Officer Momme conducted a stop and frisk of Appellant in violation of Appellant's constitutional rights. The court held a suppression hearing on June 6, 2016, and took the matter under advisement. The court denied Appellant's suppression motion on June 15, 2016, and Appellant immediately proceeded to a stipulated bench trial. The court ultimately convicted Appellant of all charged offenses.

On November 18, 2016, the trial court sentenced Appellant to an aggregate term of three (3) to ten (10) years' imprisonment, followed by two (2) years' probation. Appellant timely filed a notice of appeal on December 8, 2016. On December 9, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on December 29, 2016.

Appellant raises the following issue for our review:

> DID NOT THE [TRIAL] COURT ERR BY DENYING [APPELLANT'S] MOTION TO SUPPRESS INASMUCH AS THE ARRESTING OFFICER EXCEEDED THE SCOPE OF A FRISK BY IMMEDIATELY SEIZING A CONCEALED FIREARM THAT MANIFESTED ITSELF ONLY AS A BULGE, AND WAS NOT READILY APPARENT AS A FIREARM, AND THEREFORE THE OFFICER'S CONDUCT WAS OUTSIDE THE AUTHORITY OF A PLAIN FEEL SEARCH IN VIOLATION OF [APPELLANT'S] RIGHTS UNDER THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS.

(Appellant's Brief at 9).

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to…plenary review.

**Commonwealth v. Hoppert**, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. **Commonwealth v. Morrison**, 166 A.3d 357, 363-64 (Pa.Super. 2017). Contacts between the police and citizenry fall within three general classifications:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be

supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Carter*, 105 A.3d 765, 768 (Pa.Super. 2014) (*en banc*), *appeal denied*, 632 Pa. 667, 117 A.3d 295 (2015).

"To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005). Importantly,

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Id.* (internal citations omitted). "[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Cottman*, 764 A.2d 595, 598-99 (Pa.Super. 2000). Significantly, close spatial and temporal proximity of a person to the scene of a crime can heighten a police officer's reasonable suspicion that criminality is afoot. *Commonwealth v. Jackson*, 519 A.2d

427, 439 (Pa.Super. 1986). "In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience." *Commonwealth v. Green*, 168 A.3d 180, 184 (Pa.Super. 2017).

Additionally,

> If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect is armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. In order to establish reasonable suspicion [to conduct a pat-down], the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous.

*Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa.Super. 2008). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Commonwealth v. Cooper*, 994 A.2d 589, 592 (Pa.Super. 2010), *appeal denied*, 608 Pa. 660, 13 A.3d 474 (2010). The sole justification for the pat-down is the protection of the police officers and others nearby. *Commonwealth v. Cartagena*, 63 A.3d 294, 299 (Pa.Super. 2013) (*en banc*), *appeal denied*, 620 Pa. 728, 70 A.3d 808 (2013). The pat-down of an individual must be confined in scope to an intrusion reasonably designed to discover weapons. *Commonwealth v. Wilson*, 927, A2d 279, 285 (Pa.Super. 2007). "Following a protective pat-down search of a suspect's

person, a more intrusive search can only be justified where the officer reasonably believed that what he had felt appeared to be a weapon." ***Id.***

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Donna M. Woelpper, we conclude Appellant's issue on appeal merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (***See*** Trial Court Opinion, filed May 1, 2017, at 3) (finding: on October 24, 2015, Officer Momme and Officer O'Connor heard single gunshot near westbound side of Ogontz Avenue; Officer Momme and Officer O'Connor subsequently observed Appellant riding bicycle at fast pace away from area of gunshot; after following Appellant for short period of time, Officer Momme and Officer O'Connor stopped Appellant to investigate; during stop, Officer Momme observed bulge in outer portion of Appellant's clothing that Officer Momme believed to be firearm, based on his experience as police officer; due to his belief that Appellant was armed and dangerous, Officer Momme reached for suspicious bulge and discovered firearm; under these circumstances, Officer Momme had reasonable suspicion to stop and frisk Appellant for weapons; further, Officer Momme did not exceed scope of frisk when he reached for suspicious bulge because location of firearm on Appellant's person was apparent to Officer Momme; as such, pat-down of other areas on Appellant's person would have served no purpose and unnecessarily jeopardized safety of Officer Momme and Officer O'Connor;

therefore, police did not violate Appellant's constitutional rights when they conducted stop and frisk, and court properly denied Appellant's suppression motion). Accordingly, we affirm on the basis on the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2017

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | **FILED** : | CP-51-CR-0011253-2015 |
| v. | MAY **0 1 2017** : | |
| CHARLES STOVER | Office of Judicial Records Appeals/Post Trial | SUPERIOR COURT 3774 EDA 2016 |

OPINION

WOELPPER, J.                                                                      MAY 1, 2017



CP-51-CR-0011253-2015 Comm. v. Stover, Charles
Opinion

7939908371

### I.   PROCEDURAL & FACTUAL BACKGROUND

On June 15, 2016, this court convicted Charles Stover ("defendant") of violations of the

Uniform Firearms Act.[1]   Defendant appeals his judgments of sentence, challenging the court's

denial of his motion to suppress the firearm recovered from his person.

On October 24, 2015, at approximately 10:00 P.M., Police Officer Brad Momme and his

partner, Officer O'Connor, were in their marked police car in the area of 7600 Ogontz Avenue in

Philadelphia. The neighborhood was known for frequent gun violence and trafficking of both guns

and drugs.  Officer Momme heard a single gunshot coming from the westbound side of Ogontz

Avenue. He saw defendant riding a bicycle at a fast pace from the direction of the gunshot. The

officers began to follow defendant in their car to investigate, losing sight of him for approximately

one minute before seeing him again at 77th Street and Ogontz Avenue. N.T. 6/6/16, 8-9, 13.

---

[1] 18 Pa.C.S. §§ 6105, 6106, and 6108.

Officer Momme pulled up alongside defendant and told him to stop. He saw a bulge under defendant's jacket that he immediately believed to be a firearm based on the shape of the object, its position against defendant's body, and his eight years as a police officer. As Officer Momme stepped out of his car, defendant dropped his bicycle and tried to run into a nearby bar. Officer Momme was able to stop him. As the officer reached for the suspicious bulge, defendant said, "Yeah, it's a gun." *Id.* at 10. Officer Momme put defendant in handcuffs and recovered the firearm, which was hanging by a shoelace around defendant's neck. It was a semiautomatic TEC-9 .9 millimeter, loaded with 21 live rounds. *Id.* at 10-11, 21.

Defendant moved to suppress the evidence on the ground that Officer Momme did not have reasonable suspicion to stop him or probable cause to seize the firearm. *Id.* at 30. This court denied defendant's motion on June 15, 2016. That same day, the parties proceeded to a stipulated waiver trial, whereby they agreed to incorporate all relevant non-hearsay testimony from the motion hearing. The court found defendant guilty of the above charges and deferred sentencing for a presentence investigation and a mental health evaluation. N.T. 6/15/16, 8, 11. On November 18, 2016, the court sentenced defendant to an aggregate term of 3 to 10 years of incarceration, followed by 2 years of probation. This appeal followed.

## II.    DISCUSSION

Defendant raises the following allegation of error:

> Did not the lower court err by denying [defendant's] motion to suppress inasmuch as the arresting officer exceeded the scope of a frisk by immediately seizing a concealed firearm that manifested itself only as a bulge, and was not readily apparent as a firearm, and therefore the officer's conduct was outside the authority of a "plain feel search" in violation of [defendant's] rights under the United States and Pennsylvania Constitutions?

Statement of Errors, ¶ 1.

2

When an officer has stopped a suspect for investigation, he may also frisk the suspect if he reasonably concludes, in light of his experience, that the suspect may be armed and dangerous. *Commonwealth v. Canning*, 587 A.2d 330, 331 (Pa. Super. 1991) (citing *Terry v. Ohio*, 392 U.S. 1, 27). This "frisk" is generally limited to a quick pat-down of the suspect's clothing to determine if he has any weapons. *Id.* If, however, the officer has already identified a specific place on the suspect's person where the weapon is reasonably likely to be, he may search for a weapon directly in that area. *Commonwealth v. Houser*, 364 A.2d 459, 460 (Pa. Super. 1976). In *Houser*, while investigating a burglary, police officers saw Houser and another individual six blocks from the reported crime scene. *Id.* at 460. The officers knew both men were on probation for burglary. *Id.* As the officers approached, Houser remained in place, but his companion fled. The officer saw a bulge in Houser's jacket that was shaped like a handgun. Out of concern for his safety, he asked Houser what was in his pocket. When Houser did not respond, the officer reached into the pocket. There he found the exact amount of money allegedly taken in the burglary.

Houser moved to suppress the evidence, arguing it was seized as the result of an illegal search. *Id.* The trial court granted Houser's motion, concluding that the officer had exceeded the permissible scope of a *Terry* frisk by reaching immediately into Houser's pocket. *Id.* The Commonwealth appealed. The Superior Court reversed the trial court's ruling, explaining:

> While it is true that where probable cause to arrest is absent, a search of a suspect must be limited to one of protection for the officer, it does not follow that a police officer must perform a useless pat-down of an individual when his senses have already disclosed that a weapon may be possessed at a certain place on the suspect's person.

*Id.* at 460.

The "search" in this case was even less intrusive than that in *Houser*. While the officer in *Houser* reached into the suspect's pocket, here, Officer Momme merely reached for the outer portion of defendant's jacket where he saw what he immediately suspected was a firearm. N.T.

3

6/6/16, 10-11, 18-19, 22. As the Supreme Court noted, initiating a pat-down elsewhere on defendant's person under such circumstances would have served "no purpose" and would have unnecessarily jeopardized the officers' safety. *Houser*, 364 A.2d at 461. The court properly denied defendant's motion.[2]

### III. CONCLUSION

For all of the reasons herein, the defendant's judgments of sentence should be affirmed.

BY THE COURT:

DONNA M. WOELPPER, J.

---

[2] Moreover, even if directly reaching for the bulge were improper, the evidence would have been admissible under the inevitable discovery doctrine. Based on Officer Momme's testimony that defendant was coming from the direction where a gunshot had just been fired, had attempted to flee from the police, and had a suspicious bulge under his jacket that was the shape of a firearm, in addition to his testimony that the neighborhood was known for gun violence and gun trafficking, he was entitled to frisk defendant for his safety and the safety of his partner. *See Canning*, 587 at 330 (officer may frisk suspect for weapons when he or she reasonably believes suspect may be armed and dangerous). He would have inevitably uncovered the firearm during the pat-down. *Commonwealth v. Gonzalez*, 979 A.2d 879, 890 (Pa. Super. 2009) (evidence seized during illegal search may still be admissible if police would have inevitably discovered it by proper means).

4

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0011253-2015 |
| | : | |
| v. | : | |
| | : | SUPERIOR COURT |
| CHARLES STOVER | : | 3774 EDA 2016 |

## PROOF OF SERVICE

I hereby certify that I am this 1st day of May, 2017, serving the foregoing Opinion on the persons indicated below:

Karl L. Morgan, Assistant Defender
Defender Association of Philadelphia
1441 Sansom Street
Philadelphia, PA 19102

Hugh Burns, Chief, Appeals Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Anna Dillon
Secretary to the Honorable Donna M. Woelpper

5