437 A.2d 992

**COMMONWEALTH of Pennsylvania,**

v.

**Robert PRENGLE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Nov. 30, 1981.

Petition for Allowance of Appeal Denied March 26, 1982.

---

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, Robert Prengle, also referred to as Robert Pringle, was arrested on March 12, 1979, and charged with burglary, theft, receiving stolen property, criminal trespass and possessing an instrument of crime. A timely filed pre-trial motion to suppress evidence was heard and denied. Immediately thereafter, appellant was found guilty in a non-jury trial of burglary[1] only. Post-verdict motions were denied and appellant was sentenced to serve an eighteen month to three year term of imprisonment. This direct appeal followed.

Appellant's sole contention on appeal is that the evidence obtained as a result of his allegedly illegal arrest was impermissibly admitted into evidence. We disagree and affirm the judgment of sentence.

The facts, which are not in dispute, are as follows:

On March 12, 1979, at approximately 5:50 A.M., Officer Randy Jaudon of the Philadelphia Police Force received a J Band[2] radio bulletin advising him that a burglary had been committed at 1020 Spring Garden Street. The bulletin further advised the officer that an unknown male would be driving a truck "loaded with tires and bearing the logo 'Center City Tire Company.'" Officer Jaudon immediately

---

1. 18 Pa.C.S.A. § 3502 (1973).

2. The J Band is a city-wide radio band that broadcasts information on emergencies and high priority crimes within minutes after their occurrence. A J Band call clears all other bands so that every policeman in the city can receive the information.

proceeded to an exit ramp on the Expressway on a "hunch" that, based on the location of Center City Tire Company, the driver probably would use the expressway and exit at that ramp. Within five minutes of his arrival at the exit ramp, Officer Jaudon stopped an individual, later identified as appellant, driving a truck loaded with tires, and bearing the logo "Center City Tire Company." The officer approached the truck, asked appellant to remove himself from the cab, conducted a frisk of appellant's outer clothing for the purpose of discovering dangerous instrumentalities, and asked appellant for identification. After failing to respond to Officer Jaudon's request to produce a driver's license and an owner's card, appellant was placed under arrest. Officer Jaudon then searched the truck and recovered forty-three tires and two boxes filled with cigarettes, peanuts, and crackers. Appellant was found to be in possession of a screwdriver and "what appeared to be a switch with a key."

Appellant contends on appeal that his arrest was unlawful. More specifically, appellant argues that because the Commonwealth failed to satisfy its burden of demonstrating either (1) probable cause for the issuance of the bulletin which prompted the arrest or (2) that the arresting officer independently possessed reasonable suspicion to stop appellant, all physical evidence should have been suppressed as the fruit of an unlawful arrest.[3]

For the following reasons, we reject appellant's contention.

To begin with, the United States Supreme Court has said that:

"[t]he Fourth amendment does not require a policeman *who lacks the precise level of information necessary for probable cause to arrest* to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the

**3.** We are not now deciding, nor did either party question whether appellant has standing to challenge the admissibility of physical evidence seized from a stolen truck. We do note, however, that because appellant's presence in the truck was unlawful, any claim to a reasonable expectation of freedom from government intrusion into a stolen vehicle would be ludicrous. *See Commonwealth v. Merbah,* 270 Pa.Super. 190, 195 n. 2, 411 A.2d 244, 247 n. 2 (1979).

contrary...it may be the essence of good police work to adopt an intermediate response.... *A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time."* Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972) (citations omitted) (emphasis added).

■ Therefore, *even in the absence of probable cause,* an individual may be stopped and briefly detained provided the investigating officer can point to specific and articulable facts which in conjunction with rational inferences deriving therefrom reasonably warrant the intrusion. *Adams v. Williams, supra.*

Moreover, this court has addressed the reason why a brief detention may be permissible under circumstances substantially similar to those of the instant appeal, stating:

"[w]e should permit our police in the early stage of their investigative work (before a warrant has been issued for specific individuals), to adopt the "intermediate response" mentioned in *Adams*—to rely on radio information for the purpose of detaining individuals suspected of criminal activity, at least long enough to determine identity. If such a stop can be shown to actually have been based on probable cause, *or if the stop discloses new information,* then the police should be permitted to proceed in a reasonable manner, detaining for further investigation, or, where appropriate, making an arrest." *Commonwealth v. Benson,* 239 Pa.Super. 100, 107, 361 A.2d 695, 698 (1976), *aff'd per curiam,* 482 Pa. 1, 393 A.2d 348 (1978) (emphasis added).

■ Hence, we recognize that a police officer may rely upon information which is broadcast over a police radio in order to justify an investigatory stop *and subsequent arrest* where the Commonwealth can establish *either* (1) that probable cause existed for issuing the bulletin or (2) that new information disclosed during the stop gave rise to probable cause for arrest.

Instantly, the information supplied to Officer Jaudon over the J Band was that: (1) a burglary had been committed at 1020 Spring Garden Street;[4] (2) the perpetrator would be driving a truck with "Center City Tire Company" written on the sides; and (3) the truck probably would be filled with tires. Based on the foregoing information, Officer Jaudon, within fifteen minutes of receiving the report, stopped a truck at 6:05 A.M. in the vicinity of the burglarized premises, that matched the exact description of the truck suspected of having been stolen.

Appellant now contends that because the officer failed to establish at the suppression hearing that he *personally* observed "unusual conduct" that led him to conclude that appellant was armed and dangerous, his action in stopping appellant for investigatory purposes and patting him down for weapons was illegal. We disagree.

■ The police officer's failure to observe personally appellant engaging in "unusual conduct" does not vitiate the reasonableness of the officer's action in the instant case. The facts known to the officer prior to the frisk in question show that a crime of violence was reported, and, within minutes of the reported crime, the officer saw a moving vehicle matching the exact description of the stolen truck in the vicinity of the crime. Under these circumstances, *we will not ignore the probable existence of danger* and require that the officer *first* ask for identification prior to conducting a protective frisk. As Justice Harlan so aptly stated in *Terry v. Ohio*:

> [w]here such a stop is reasonable . . . *the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence.* Just as a full search incident to a lawful arrest requires no additional justification, a limited frisk incident

4. Burglary is a felony of the first degree, 18 Pa.C.S.A. § 3502(c) (1973), and also is recognized to be a crime of violence. In this connection, it is important to note that Officer Jaudon rightfully could assume not only that the perpetrator was a fleeing felon, but also that he had engaged in violent criminal activity.

to a lawful stop must often be rapid and routine. *There is no reason why an officer rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet.* Terry v. Ohio, 392 U.S. 1, 36, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889, 913 (1968) (Harlan, J., concurring) (emphasis added).

██ The facts of this case are illustrative of a proper investigatory stop and an incident frisk. Moreover, appellant's inability to produce a driver's license or an owner's card provided the officer with new information sufficient to justify appellant's arrest. *Commonwealth v. Benson, supra.* Accordingly, the lower court did not err in denying appellant's motion to suppress.[5]

Judgment of sentence affirmed.

---

**5.** We are mindful of Justice Robert's opinion in *Commonwealth v. Pegram*, 450 Pa. 590, 301 A.2d 695 (1975), wherein he opined that a "pat down" of a burglary suspect was without lawful justification where the police officer was unable to point to any particular facts from which he reasonably inferred that the suspect was armed or dangerous, and conducted the frisk for his own protection. Nevertheless, the circumstances of this case, specifically, the detailed description furnished over the J Band, the nature of the crime, the time of morning, and the fact that the officer was stopping a truck that matched the exact description of the one suspected of having been stolen, warrant a result different from that reached in *Pegram, supra.*