519 A.2d 427

**COMMONWEALTH of Pennsylvania**

v.

**Jerry JACKSON, Appellant.**

Superior Court of Pennsylvania.

Submitted May 5, 1986.

Filed Dec. 15, 1986.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before MONTEMURO, HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This is an appeal from the denial of a petition for writ of certiorari filed with the Court of Common Pleas of Philadelphia County. Appellant was convicted in the Municipal Court of Philadelphia of carrying a firearm without a license, 18 Pa.C.S.A. § 6106, and carrying a firearm on a public street or place in Philadelphia, 18 Pa.C.S.A. § 6108. Appellant contends that certain physical evidence should have been suppressed because the police lacked either probable cause or reasonable suspicion sufficient to justify the seizure of this evidence. For the following reasons, we vacate the judgment of sentence and remand for a new trial.

On May 12, 1984, two Philadelphia police officers responded to a radio call ordering them to investigate a burglary at 317 N. 63rd St. in Philadelphia. These officers met with the complainant, who stated that at 3:20 p.m. two males had tried to kick in his front door, and that one of them, a black male wearing a gray sweatsuit, ran east on Vine St. N.T. July 13, 1984 at 4; *id.* April 19, 1985 at 4. Within two or three minutes of responding to the radio call, and approximately two blocks from the complainant's home, the officers spotted appellant, a black male wearing a gray sweatsuit and carrying a blue gym bag, running west on Vine St. towards the scene of the crime. *Id.* July 13, 1984 at 4–7. The officers stopped appellant, who did not attempt to flee. Without questioning appellant, they patted him down and then searched his opaque, zippered gym bag, within which was found a .32 caliber revolver loaded with one live round of ammunition.[1] *Id.* April 19, 1985 at 5–7.

---

1. The record contains no evidence of any communication between appellant and the investigating officers between the time he was stopped and the time he was patted down. The record is explicit regarding the lack of investigative questioning subsequent to the pat-down:

> Q. And when you discovered the gun did [appellant] offer you an explanation what he was doing with it at the time or subsequently?
> A. No, ma'am.
> Q. No, he did not say anything to you whatsoever?
> A. No, I didn't ask him any questions.

During a subsequent on-site identification, the complainant did not identify appellant as one of the perpetrators.[2] Appellant was then arrested and charged with the instant offenses.

Appellant filed a motion to suppress the revolver, which was denied by the Municipal Court. In a Municipal Court bench trial, appellant was found guilty of the weapons offenses. Appellant subsequently filed a petition for writ of certiorari with the Court of Common Pleas, seeking suppression of the seized evidence. The court denied the petition, prompting this appeal.

The standard for reviewing the propriety of a suppression ruling is well-established:

> Our function on review of an order denying a motion to suppress is to determine whether the factual findings of the lower court are supported by the record. In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cavalieri*, 336 Pa.Superior Ct. 252, 254–55, 485 A.2d 790, 791 (1984). The threshold for a finding of probable cause to arrest exceeds that for justification of a stop and frisk: "[e]ven in the absence of probable cause, an individual may be stopped and briefly detained." *Commonwealth v. Prengle*, 293 Pa.Superior Ct. 64, 68, 437 A.2d 992, 994 (1981). Because appellant contends that the evidence should have been suppressed under either standard, we must first determine whether the record supports the lower court's factual findings and legal conclusions that the search of appellant was justified under the stop and frisk

N.T. April 19, 1985 at 7.

**2.** Later that evening, the complainant identified another black male wearing a gray sweatsuit as one of the perpetrators. N.T. July 13, 1984 at 9–10.

doctrine. If the frisk or search of appellant was not justified under the standard first established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), then it follows that this evidence could not properly have been admitted as the fruit of a search incident to a lawful arrest predicated upon probable cause.

We must examine the investigating officers' actions at two levels of inquiry: the legality of the initial stop, and the propriety of the officers' actions subsequent to the stop. *See Commonwealth v. Otto*, 343 Pa.Superior Ct. 457, 460–61, 495 A.2d 554, 555 (1985). "If [the] police have a reasonable suspicion that criminal activity is afoot, they may make a temporary, investigatory stop even though they lack probable cause to make an arrest." *Commonwealth v. Capers*, 340 Pa.Superior Ct. 136, 141, 489 A.2d 879, 881 (1985) (citation omitted). The initial stop of a person is legitimate if the investigating officers "[c]an point to specific and articulable facts which in conjunction with rational inferences deriving therefrom reasonably warrant the intrusion." *Commonwealth v. Prengle, supra*. Such a stop facilitates the acquisition of information useful to the investigating officers:

> *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (citation omitted). The search or frisk of a suspect incident to such a stop, however, must meet a higher threshold of justification

> The police officer may legitimately sieze a person ... and conduct a limited search of the individual's clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others if the police officer observes unusual and suspicious conduct on the part of the individual seized which

leads him to conclude that criminal activity is afoot and that the person with whom he is dealing may be armed and dangerous.

*Commonwealth v. Hicks,* 434 Pa. 153, 158–59, 253 A.2d 276, 279 (1969).

A police officer need not personally observe unusual or suspicious conduct reasonably leading to the conclusion that criminal activity is afoot and that a person is armed and dangerous; this Court has recognized that "... a police officer may rely upon information which is broadcast over a police radio in order to justify an investigatory stop." *Commonwealth v. Prengle, supra,* 293 Pa.Superior Ct. at 68, 437 A.2d at 994. In such cases, the factors that must be considered in justifying an investigatory stop and subsequent frisk include the specificity of the description of the suspect in conjunction with how well the suspect fits the given description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation, and the nature of the offense reported to have been committed. *See Commonwealth v. Whelton,* 319 Pa.Superior Ct. 42, 50 n. 4, 465 A.2d 1043, 1049 n. 4 (1983).

Although specificity of description is only one of the factors examined in justifying a stop and frisk, it is of great importance in situations where the investigating officers have not personally observed suspicious behavior; the police need to have identification information specific enough to reasonably conclude that the party they are stopping is actually the person for whom they are searching. *See Commonwealth v. Whelton,* 319 Pa.Superior Ct. 42, 465 A.2d 1043 (stop and frisk of robbery suspect justified where defendant matches description as to race, height, weight, age, hair, coat, footwear, and facial characteristics); *Commonwealth v. Capers,* 340 Pa.Superior Ct. 136, 489 A.2d 879 (stop and frisk justified where defendant matches description of assailant as to face, height, build, skin tone and jacket, acts suspiciously, approaches from scene of crime, is known to be armed, and has bloody hand). Our Supreme Court has held, however, that an overly general description

will not support a *Terry* stop and frisk in the absence of suspicious behavior observed by the investigating officer. *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970). In *Berrios*, the frisk of the defendant was found improper where police, seeking two blacks in dark clothing and one hispanic in light clothing moving east on a particular street after a shooting, seized a gun from an hispanic man in light clothing, who was accompanied by a black man dressed in dark clothing and was walking east on the specified street within twenty minutes and three blocks of the shooting. Our Supreme Court noted that not only was the defendant acting in a normal manner, but also that the description of the perpetrator was too vague to justify searches of all "[hispanics] wearing light clothing and walking with a negro in this area." *Id.*, 437 Pa. at 342, 263 A.2d at 344.

Close spatial and temporal proximity of a suspect to the scene of a crime can also heighten a police officer's reasonable suspicion that a suspect is the perpetrator for whom the police are searching. Moreover, the time and place of an encounter may indicate that a person, conspicuous through their solitary presence at a late hour or desolate location, may be the object of a search. *See Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985) *cert. denied Cortez v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985); *Commonwealth v. Carter*, 334 Pa. Superior Ct. 369, 483 A.2d 495 (1984).

■ To justify a frisk incident to an investigatory stop, the police need to point to specific and articulable facts indicating that the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase "for our own protection," a phrase invoked by the investigating officers in the instant case, becomes meaningless. An expectation of danger may arise under several different circumstances. The police may reasonably believe themselves to be in danger when the crime reported to have been committed is a violent crime, *see Commonwealth v. Prengle, supra*, 293 Pa.Superior Ct. at 69, 437 A.2d at 995,

when a perpetrator is reported to possess or have used a weapon, *see Commonwealth v. Capers, supra,* 340 Pa.Superior Ct. at 141, 489 A.2d at 881; *Commonwealth v. Sheridan,* 292 Pa.Superior Ct. 278, 437 A.2d 44 (1981), *aff'd* 502 Pa. 612, 467 A.2d 1126 (1983), when the police observe suspicious behavior such as sudden or threatening moves, or the presence of suspicious bulges in a suspect's clothing, *see Commonwealth v. Carter, supra,* 334 Pa.Superior Ct. at 369, 483 A.2d at 497, or when the hour is late or the location is desolate, *see Commonwealth v. Cortez, supra,* 507 Pa. at 533, 491 A.2d at 112; *Commonwealth v. Prengle, supra,* 293 Pa.Superior Ct. at 70 n. 5, 437 A.2d at 995 n. 5. A frisk might also be implemented to protect innocent bystanders within the vicinity of an encounter. *See Commonwealth v. Whelton, supra,* 319 Pa.Superior Ct. at 53, 465 A.2d at 1049.

■ In the instant case, the search of appellant's bag was improper. Here, the police initially responded to a radio call reporting a burglary in progress.[3] The police officers subsequently acquired first-hand information through their interview with the complainant, who stated that one of the perpetrators, a black male wearing a gray sweatsuit, ran east on Vine St. The police were thus certain that criminal activity was afoot. This vague description, however, was no more comprehensive than that which the police acted upon in *Berrios,* and was insufficient in itself to justify a stop and frisk.

**3.** The lower court's opinion upholding the denial of the motion to suppress states that the police responded to a "flash radio information," a higher-priority transmission than a regular radio call. Lower Court Opinion at 2. This assertion is unsupported by the record. *See also* Brief for Appellee at 2. A flash information is based on a report from the initial officers to investigate the scene of a crime and is broadcast to other police units in the district. Despite the urgency connoted by its title, a flash information is of lesser priority than a city-wide "J-band transmission," such as the broadcast that served as the source of information for the arresting officer in *Commonwealth v. Prengle, supra,* 293 Pa.Superior Ct. at 66 n. 2, 70 n. 5, 431 A.2d at 993 n. 2, 995 n. 5.

■ Moreover, the investigating officers' interview with the complainant yielded little evidence that appellant might be armed and dangerous. While the police may have had some expectation of danger based on the nature of the crime reported over the police radio, the complainant made no mention of the use or presence of weapons, leaving the investigating officer with few, if any, specific or articulable facts suggesting that appellant was armed and dangerous.

The specific facts and circumstances of the encounter between appellant and the police also yield little evidence that the investigating officers' observations justified the immediate frisk of appellant and search of his sealed bag. Appellant was spotted within several minutes and within a few blocks of the crime. He matched the description supplied by the complainant in that he was a black male wearing a gray sweatsuit, and also in that he was running, albeit towards rather than away from the scene of the crime. In light of appellant's proximity and conformance with the limited description, the police acted diligently in stopping him. Our difficulty lies in the immediate frisk of appellant and search of his bag without first implementing an intermediate investigatory response that could supply the investigating officers with sufficient articulable facts to justify a frisk or search.

■ The investigating officers had insufficient information to conclude that appellant was the perpetrator of the crime. He was wearing a gray sweatsuit and running on a city street during an afternoon in May. This is not unusual or suspicious behavior; any number of men in the area might have fit this description.[4] Furthermore, appellant was running towards the scene of the crime, rather than in the direction stated by the complainant and dictated by logic.

4. Both the brief for appellee and the Lower Court Opinion state that there was no one else in the vicinity of the encounter who fit the description supplied by the complainant. Brief for Appellee at 4; Lower Court Opinion at 5. There is no evidence in the record to support this assertion.

■ Additionally, there is no evidence that the investigating officers, prior to frisking appellant, had observed any behavior or circumstances suggesting that appellant might be armed and dangerous. He willingly approached the investigating officers, and there is no evidence that he acted suspiciously or had suspicious bulges in his clothing. The encounter took place during the afternoon on a city street, rather than in an unusual or desolate setting that might put the officers in particular fear of danger. Nor did the investigating officers indicate that there was any need to protect innocent bystanders from possible harm. Moreover, appellant was confronted by two officers; this was not a situation where an immediate frisk would be justified to maintain the status quo between suspects and easily overwhelmed patrolmen.

In light of the foregoing, we conclude that although the police justifiably stopped appellant, the immediate frisk of his person and search of his bag were improper. We are not holding that the police must always question a suspect before frisking him; we merely conclude that based on the particular facts of this case, the police should have attempted to elicit some clarifying information from appellant before frisking him and searching his closed bag.

We are mindful that courts should not indulge in unrealistic second-guessing, and that "the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, in itself, render [a] search unreasonable." *U.S. v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985) (quoting *Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973)). However, as Justice Rehnquist points out in *Sharpe,* "[t]he question is not simply whether some alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it." *Id.,* 105 S.Ct. at 1576. In the instant case, where there was a lack of specific and articulable facts indicating that appellant was armed and dangerous, the use of even minimal investigative questioning would have enabled the police to evaluate

whether appellant was the individual they were looking for and whether he should be frisked. The use and results of such investigative questioning have consistently aided our courts in justifying *Terry* stop and frisk procedures or finding probable cause. *See Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111; *Commonwealth v. Otto,* 343 Pa.Superior Ct. 457, 495 A.2d 554; *Commonwealth v. Sheridan, supra; Commonwealth v. LeSeuer,* 252 Pa.Super. 498, 382 A.2d 127 (1977). Furthermore, as this court recently stated "[i]n today's complex society police are 'charged with the protection of constitutional rights, the maintenance of order, [and other community caretaking functions].'" *Commonwealth v. Rehmeyer,* 349 Pa.Superior Ct. 176, 183, 502 A.2d 1332, 1336 (1985) (quoting La Fave, *Street Encounters and the Constitution; Terry, Sibron, Peters and Beyond,* 67 Michigan L.Rev. 40, 61–62 (1968)). Selecting the best means to achieve these goals is often difficult. As Justice Harlan stated in his concurrence to *Terry v. Ohio:* "[t]here is no reason why an officer rightfully but forcefully confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet." *Terry v. Ohio, supra,* 392 U.S. at 36, 88 S.Ct. at 1887 (HARLAN, J., concurring). However, the majority stated:

> [in assessing] the reasonableness of a particular search or seizure in light of the particular circumstances ... it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate?

*Id.* at 21–22, 88 S.Ct. at 1880. In the instant case, reasonable caution applies not only to the need of the officers to protect themselves, but also to the degree of certainty that appellant was the perpetrator and that he was armed and dangerous. Given "our own Supreme Court's expressed policy 'of scrupulously adhering to the narrow scope of the [*Terry* ] exception,'" *Commonwealth v. Cavalieri, supra,* 336 Pa.Superior Ct. at 260–61, 485 A.2d at 794 (quoting

*Commonwealth v. Lovette,* 498 Pa. 665, 676, 450 A.2d 975, 980 (1982)), and considering the numerous uncertainties inherent in appellant's encounter with the police, some intermediate investigatory response would have been reasonable and proper in developing a level of suspicion sufficient to justify the search of appellant.

For the foregoing reasons, we vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated and case remanded for a new trial. Jurisdiction is relinquished.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I respectfully dissent. I would affirm on the opinion of Judge Hirsh of the trial court.