J-A03019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| REGINALD PEARSALL | : | |
| | : | |
| Appellant | : | No. 235 EDA 2017 |

Appeal from the Judgment of Sentence Entered December 21, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009362-2015

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED APRIL 02, 2018**

Reginald Pearsall appeals from the judgment of sentence imposed on his convictions for the crimes of persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, possession of a controlled substance, and resisting arrest.[1] On appeal, Pearsall contends that the trial court erred in denying his pre-trial motion to suppress evidence, and challenges the sufficiency of the evidence to support his conviction for resisting arrest. We affirm.

The relevant facts of this case are as follows. Philadelphia Police Detective James Brady saw Pearsall, whom he believed to be the perpetrator of a burglary; he had observed the burglar in a surveillance video. Officer

---

\* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105, 6106, 6108, 5104; 35 P.S. § 780-113(a)(16), respectively.

Brady directed another officer, Officer Dianca Newman, to stop Pearsall. She attempted to do so, and Pearsall fled. However, police apprehended and arrested him, and they seized a gun and drugs. Pearsall was charged with the above crimes, and before trial, he moved to suppress the gun and the drugs.

At a hearing on Pearsall's motion to suppress, the Commonwealth presented the testimony of Detective Brady and Officer Newman. Detective Brady testified that on August 29, 2015, he was investigating a burglary at a mini market and observed surveillance footage of the burglary that showed a black male in his 20s who appeared to the detective to be relatively tall, over six feet tall. N.T. Suppression Hearing, 01/15/16, at 7- 8. The male had distinguishing long dreadlocks and wore a white t-shirt. *Id.*

Detective Brady explained that the following day, August 30, 2015, he was working on an unrelated case when he observed a man later identified as Pearsall walking on the street. *Id.* at 10. Pearsall was wearing a white t-shirt, had long dreadlocks, and was relatively tall, over six feet tall. *Id.* at 10, 12. He was also carrying a drawstring backpack and was approximately 100 yards from the mini market that had been burglarized. *Id.* at 10, 24. Detective Brady, who was in an unmarked car, sent Pearsall's description and location over police radio to all police cars in the vicinity and asked that he be stopped for identification. *Id.* at 11.

Officer Newman testified that she responded to Detective Brady's radio call, and when she arrived at the scene, Detective Brady motioned toward

Pearsall, as to identify him to Officer Newman as the man to stop. Officer Newman called to Pearsall, "Yo, my man, stop right there." *Id.* at 36-37. Officer Newman said that she then got out of her vehicle and told Pearsall to hang up his phone. He complied, but then swung his backpack around to the front of his body "to create space" between himself and Officer Newman, and took off running. *Id.* at 36. Officer Newman pursued him, and Pearsall tossed his backpack to the ground and stopped running approximately 50 yards from where he tossed it. *Id.* at 37, 38. Officer Newman ordered him to get on the ground but he refused, so she drew her firearm and again ordered Pearsall to the ground. He finally complied but then refused to put his hands behind his back, which resulted in a brief struggle necessitating Detective Brady's assistance. *Id.* at 14, 39. Officer Newman and Detective Brady then placed Pearsall under arrest. *Id.* at 14.

Officer Newman testified that once Pearsall was under arrest, she directed a back-up officer, Officer Knowles, to retrieve Pearsall's backpack. *Id.* at 43. Officer Knowles testified that when he picked up the backpack, he immediately felt what he believed to be a gun, and when he opened the backpack he found a firearm. *Id.* at 50. Officer Newman performed a search of Pearsall incident to arrest and recovered seven packages of crack cocaine. *Id.* at 39. Detective Brady was then called to another location where the actual burglar of the mini market was positively identified and subsequently taken into custody. *Id.* at 15. Pearsall was not charged with the burglary.

Following the suppression hearing, the court denied Pearsall's motion to suppress. The court later held a bench trial on stipulated facts at which the testimony from the suppression hearing was incorporated[2] and found Pearsall guilty of all charges. The court later sentenced him to an aggregate prison term of four to eight years. Pearsall filed a timely Notice of Appeal, as well as a timely Concise Statement of Matters Complained of on Appeal.

He raises two issues for our review:

> Was not reasonable suspicion lacking to stop appellant, who was merely walking down the street near a market that had been burglarized the previous day, where police relied on an impermissibly vague profile that appellant did not even match?

> Was not appellant erroneously convicted of resisting arrest, 18 Pa.C.S.A. §5104, where the Commonwealth failed to prove that the underlying arrest was lawful and that appellant's minor act of non-submission fell within the ambit of the statute?

Appellant's Brief at 3.

In his first issue, Pearsall argues that Detective Brady did not have a sufficient basis to reasonably suspect that Pearsall was the perpetrator of the burglary. Appellant's Brief at 12. Pearsall claims that the description Detective Brady was able to glean from the surveillance video was exceedingly vague and overbroad, and did not fit him. *Id.* at 12, 13. Pearsall contends that where a *Terry*[3] stop is based not on police observation of an individual's suspicious

---

[2] N.T., 10/12/16, at 10.

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

- 4 -

conduct, but on the individual's resemblance to a description of a suspect, the police need to have information specific enough to reasonably conclude that the party they are stopping is actually the person for whom they are searching. ***Commonwealth v. Jackson***, 519 A.2d 427, 430 (Pa.Super. 1986).

When reviewing a denial of a suppression motion, we consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. ***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (Pa. 2007). It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some, or none of the evidence presented at the suppression hearing. ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa.Super. 2003).

There are three possible encounters between law enforcement and the public. The parties agree that the instant case involves an investigative detention, which requires reasonable suspicion. ***Commonwealth v. Collins***, 950 A.2d 1041, 1046 (Pa.Super. 2008); ***Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa. 1999). To justify an investigative detention in response to a motion to suppress, an officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience. ***Cook***, 735 at 677. While individual facts by themselves may not be enough to establish reasonable suspicion, a collection of those facts taken

together may be sufficient to do so. *Id.* In other words, in order to determine whether the police had reasonable suspicion, we must consider the totality of the circumstances – *i.e.*, "the whole picture . . . ." *Commonwealth v. Thomas*, ___ A.3d ___, 2018 PA Super 18, at *4 (filed Feb. 1, 2018).

Pearsall argues that police lacked reasonable suspicion to stop him because the description Detective Brady developed of the perpetrator of the burglary was too vague. Appellant's Brief at 11. Notably, he asserts that the description at issue in the instant case is less vague than the description provided in *Jackson*, 519 A.2d at 430. There, a burglary victim described the burglar to police as a black male wearing a gray sweat suit who ran east down the street, away from the scene *Id.* at 430. Within two minutes of the victim giving the description to police and approximately two blocks from the burglary scene, officers spotted Jackson wearing a gray sweat suit running west towards the scene of the crime, and the officers performed a *Terry* stop. *Id.* at 429. This Court held that the description was too vague in itself to justify a stop and frisk. *Id.* at 431.

Here, unlike the officers in *Jackson*, Detective Brady was not relying on a vague description given to him by someone else who had observed the perpetrator. Rather, Detective Brady personally viewed the surveillance footage and observed the appearance of the perpetrator of the burglary. *Id.* at 8. He subsequently directed Officer Newman to stop Pearsall because Pearsall's appearance was consistent with his personal observation of the

perpetrator's appearance. While a day had passed since the burglary, Pearsall was stopped 100 yards from the area of the burglary and he appeared similar to the male that Detective Brady viewed in the video, wearing a white t-shirt, having long dreadlocks, and being over six feet tall. *Id.* at 10, 12, 24. These facts together were sufficient to reasonably suspect that Pearsall was the perpetrator of the burglary and they therefore support the *Terry* stop.

Pearsall claims that the trial court erroneously relied on the good faith exception to the exclusionary rule to support the denial of his motion to suppress. This is a misinterpretation of the record. The good faith exception provides that, as a matter of federal constitutional law,[4] a court should not exclude evidence obtained during a search performed pursuant to a duly issued search warrant if police perform the search in good faith reliance on the warrant. *See United States v. Leon*, 468 U.S. 897, 920 (1984). Here, the trial court said, "I find that Officer Brady – Detective Brady acted in good faith when he looked up and saw a man that was very similar to the guy he saw in the video". N.T., Suppression Hearing, at 67. Thus, the court found as fact that Detective Brady believed in good faith that Pearsall looked like the male that he observed in the surveillance video. The court in no way relied on the good faith exception in denying the suppression motion.

---

[4] There is no good faith exception to the exclusionary rule under Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Johnson*, 86 A.3d 182, 188 (Pa. 2014) (citing *Commonwealth v. Edmunds*, 586 A.2d 887, 905 (Pa. 1991).

Pearsall also contends there was a discrepancy between Detective Brady's description of the male in the video and the description written in the police report. However, Pearsall again misconstrues the record. Police identified the actual perpetrator of the burglary *after* Pearsall had been stopped. N.T., Suppression Hearing, 1/15/16, at 15. It was only at that point – that is, after Pearsall had been stopped – that Detective Brady drafted the police report that included the description of the actual perpetrator that Pearsall claims was inconsistent with his appearance. The police thus could not have, and did not, rely on the description in the police report when stopping Pearsall. Rather, Detective Brady relied on his personal observation of the surveillance video when he directed Officer Newman to stop Pearsall.

In his second issue, Pearsall challenges the sufficiency of the evidence to support his conviction for resisting arrest. When reviewing a challenge to the sufficiency of the evidence, this Court determines whether, viewing all the evidence at trial in the light most favorable to the Commonwealth as verdict-winner, there is sufficient evidence to enable a fact finder to find every element of the crime beyond a reasonable doubt. In applying this test, the entire record must be evaluated and all evidence actually received must be considered. ***Commonwealth v. Estepp***, 17 A.3d 939, 943-44 (Pa.Super. 2011).

Pearsall argues that evidence was insufficient to sustain his conviction for resisting arrest because it did not establish that the underlying arrest was

lawful. Appellant's Brief at 8. Pearsall also argues that his conduct does not fall within the conduct prohibited by the resisting arrest statute because, according to him, his conduct amounted to only "partial non-submission." ***Id.*** at 21.

> The resisting arrest statute reads:
>
> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome resistance.

18 Pa.C.S.A. § 5104.

The crime of resisting arrest can be established without evidence of "aggressive use of force such as striking or kicking of the officer." ***Commonwealth v. McDonald***, 17 A.3d 1282, 1285 (Pa.Super. 2011) (citation omitted). Even passive resistance is enough to sustain a conviction for resisting arrest where officers are required to exert substantial force to overcome the arrestee. ***Commonwealth v. Thompson***, 922 A.2d 926, 928 (Pa.Super. 2007).

Here, Pearsall's arrest was lawful. Since Detective Brady had reasonable suspicion to effect an investigative detention of Pearsall, all that followed, including his eventual arrest, was lawful. The evidence was also otherwise sufficient to sustain the conviction for resisting arrest. Pearsall ran from Officer Newman when she asked if he had identification. N.T., Suppression Hearing, 1/15/16, at 37. After chasing him for two and a half blocks, Officer Newman

had to ask him twice to get on the ground before he complied. *Id.* at 38, 39. As a result of Pearsall's not complying with Officer Newman's first command to get on the ground, she drew her firearm and again made the same request. *Id.* at. 39. Pearsall then refused to put his hands behind his back, which resulted in a brief struggle and required the assistance of Detective Brady. *Id.* at 14, 39.

Viewing the evidence in the light most favorable to the Commonwealth, Pearsall's actions were not minor acts of non-submission. Pearsall's continuing defiance required Officer Newman to employ substantial force by drawing her firearm and obtaining assistance from Detective Brady. The evidence presented was therefore sufficient to sustain Pearsall's conviction for resisting arrest.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/2018