**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TONY SCOTT, | : | |
| | : | |
| Appellant | : | No. 387 EDA 2017 |

Appeal from the Judgment of Sentence January 23, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010391-2015,
CP-51-CR-0010392-2015, CP-51-CR-0010393-2015,
CP-51-CR-0010394-2015, CP-51-CR-0010395-2015,
CP-51-CR-0011108-2015

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:     **FILED JANUARY 30, 2019**

Appellant, Tony Scott, appeals from the Judgments of Sentence entered by the Philadelphia County Court of Common Pleas following his convictions of numerous counts of Robbery, Criminal Conspiracy, and Possession of an Instrument of Crime ("PIC")[1] at six criminal dockets. Appellant challenges the denial of his Motion to Suppress. After careful review, we affirm.

The relevant facts, as gleaned from the certified record, are as follows. Briefly, on March 8 to 9, 2015, Philadelphia Police Officer Christopher Adams was patrolling the area of 60th Street and Cedar Avenue in the 18th District in Philadelphia during his overnight shift with his partner Officer Denia Starks.

---

[1] 18 Pa.C.S. § 3701(a)(1)(ii); 18 Pa.C.S. § 903; and 18 Pa.C.S. § 907, respectively.

Officer Adams was very familiar with this high-crime area because he had worked in the 18th District for nine years and he had responded to numerous robberies, shootings, and homicides in this area.

While on patrol, Officer Adams was on alert due to a recent string of unsolved armed robberies in this area. At roll call, his sergeant had instructed him to patrol this particular area due to several unsolved gunpoint robberies. On March 7, 2015, Officer Adams had responded to an armed robbery at 609 S. 60th Street and interviewed the victim, who provided a flash description of the two perpetrators. Officer Adams had reviewed a related police report from March 6 for a robbery in the same area where the victim provided a similar description of the two perpetrators.

Based on the above information, Officer Adams began to suspect a particular individual had participated in each of these gunpoint robberies: Appellant. Officer Adams knew Appellant from his routine patrol of the neighborhood and his previous job working in a correctional facility, where Appellant had been incarcerated. Also, Officer Adams had interacted with Appellant a few weeks prior to this night when he responded to a domestic dispute in Appellant's home in the same area at 6022 Cedar Avenue. During this call, Officer Adams observed what he believed to be a firearm on top of a refrigerator. Officer Adams determined it was not a real firearm and continued investigating the domestic dispute. Before he started his March 8 patrol,

Officer Adams informed Detective Matthew Farley that he should put Appellant in a photographic array for the robbery victims.

At 12:58 A.M. on March 9, 2015, Officer Adams heard flash information over police radio about another robbery, this time at 60th Street and Walton Avenue. Officer Adams could not respond at that time because he was conducting a traffic stop, but he believed the flash description matched the descriptions from these other robberies.

At 4:30 A.M., Officer Adams was still on patrol in his vehicle with his partner Officer Starks. Officer Adams pulled up to the light facing northbound at 60th Street and Spruce Street, looked to his right, and saw Appellant standing alone on the dark corner. Appellant was wearing a dark, hooded North Face jacket and had a ski mask around his neck.

Officer Adams exited his patrol vehicle, but Officer Starks remained inside. Officer Adams approached Appellant[2] and said, "Tony, you fit the flash of these robberies going on. … Tony, I'm going to have to take you in for investigation. … Tony, you got anything on me?" N.T. Motion, 10/12/16, at 18. Appellant replied, "I got that pellet gun on me." *Id.*

Officer Adams immediately recovered the weapon, placed Appellant in custody, and pursuant to a search, recovered two cell phones, the ski mask,

---

[2] Officer Adams did not make any show of force with the police vehicle or use any police equipment.

and the jacket Appellant was wearing, which police later determined belonged to one of the robbery victims.

Later that day, Detective Matthew Farley obtained and executed a search warrant for Appellant's home on the second floor of 6022 Cedar Avenue. Detective Farley recovered multiple cell phones, cell phone covers, wallets, credit cards, identification, and mail. Several of the robbery victims later identified some of these cell phones, cell phone covers, wallets, credit cards, and identification cards as their property.

Detective Farley interviewed Appellant the next day at the police station. After Detective Farley read **Miranda**[3] warnings, Appellant confessed to committing each of the six robberies.

The Commonwealth charged Appellant with, *inter alia*, the above offenses at six different dockets for the separate armed robberies. On December 11, 2015, Appellant filed a Motion to Suppress all of the physical evidence recovered from Appellant's person and his home from the search warrant, as well as his statements to police averring Officer Adams's initial stop of Appellant comprised an immediate arrest that was not based on probable cause. At the suppression hearing, Officer Adams and Detective Farley testified to the above facts. The court took judicial notice of Appellant's height, his apparent age, and his appearance, and concluded that the flash

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

descriptions of Appellant were "accurate." N.T. Motion, 10/12/16, at 60. The court denied Appellant's Motion to Suppress.

Appellant waived his right to a jury trial and proceeded with a stipulated bench trial based on the evidence adduced at the suppression hearing. In addition to the suppression hearing testimony, the Commonwealth presented the police paperwork, Appellant's confessions, the search warrant, and a certificate indicating that Appellant was ineligible to possess a firearm due to his prior conviction. N.T. Trial, 11/7/16, at 7-8.

On November 7, 2016, the trial court convicted Appellant of all charges. On January 23, 2017, the trial court sentenced him to an aggregate term of six to thirteen years' incarceration, followed by four years' probation.

On January 25, 2017, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

1. Did not the trial court err by denying [A]ppellant's motion to suppress physical evidence, under both the federal and state constitutions, inasmuch as [A]ppellant was placed under arrest without probable cause where it was physically impossible for [A]ppellant to match the multiple general descriptions of suspects involved in robberies in the area, the officer observed [A]ppellant three hours after and eight blocks away from the last reported robbery and the officer's suspicion of [A]ppellant was based on an unrelated domestic incident one week prior; and was not reasonable suspicion of criminal activity to justify an investigative detention lacking for the same reasons?

2. Did not the trial court err by denying [A]ppellant's motion to suppress his written confession as well as physical evidence recovered during execution of an illegally obtained search warrant, under both the federal and state constitutions, inasmuch

as the evidence and confession were fruit of [A]ppellant's illegal arrest?

Appellant's Brief at 3.

In reviewing the denial of a Motion to Suppress, we are limited to considering only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. McCoy*, 154 A.3d 813, 815-16 (Pa. Super. 2017). Further, "[t]he scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." *Commonwealth v. Neal*, 151 A.3d 1068, 1071 (Pa. Super. 2016) (citing *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013)).

Where the testimony and other evidence supports the suppression court's findings of fact, we are bound by them and "may reverse only if the court erred in reaching its legal conclusions based upon the facts." *McCoy*, 154 A.3d at 816. It is within the exclusive province of the suppression court to "pass on the credibility of witnesses and determine the weight to be given to their testimony." *Id.* This Court will not disturb a suppression court's credibility determination absent a clear and manifest error. *Commonwealth v. Camacho*, 625 A.2d 1242, 1245 (Pa. Super. 1993).

Importantly, "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's

rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-48 (Pa. 2012) (citations omitted); ***see also*** Pa.R.Crim.P. 581(H).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). To effectuate these protections, the exclusionary rule bars the use of illegally obtained evidence in state prosecutions in order to deter illegal searches and seizures. ***Commonwealth v. Arter***, 151 A.3d 149, 153-54 (Pa. 2016).

"To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000). There are three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. ***Id.*** The question of "whether the police needed some level of requisite cause at the time they initially approached" the defendant is "governed by the type of encounter that the police initiated when they approached" the defendant. ***In re D.M.***, 781 A.2d at 1164.

On appeal, Appellant contends that Officer Adams immediately placed him under arrest. Appellant's Brief at 13-14. In its Pa.R.A.P. 1925(a) Opinion,

the suppression court opined that Officer Adams first subjected Appellant to an investigative detention during their interaction at 60th and Spruce.[4]

When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of **Terry v. Ohio**, 392 U.S. 1 (1968), wherein the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot.

"When conducting a **Terry** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present." **Commonwealth v. Carter**, 105 A.3d 765, 769 (Pa. Super. 2014) (footnote and citation omitted). In order to justify an investigative detention, a police officer must be able to identify "specific and articulable facts" leading her to suspect that criminal activity is afoot. **Terry**, 392 U.S. at 21.

In determining whether an officer's stop of a defendant was supported by reasonable suspicion, the court must consider the totality of the circumstances, and give due weight to the reasonable inferences the officer drew from the facts based upon her experience. **Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*). "[E]ven a combination of

---

[4] At the suppression hearing, the court concluded that, based upon the totality of the circumstances, Officer Adams had **both** reasonable suspicion and probable cause to stop and arrest Appellant. N.T. Motion, 10/12/16, at 59-60.

innocent facts, when taken together, may warrant further investigation by the police officer." ***Id.*** (citations omitted).

As part of the totality of circumstances, this Court has previously examined "the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked." ***Commonwealth v. Collins***, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*).

Moreover, "a police officer may rely upon information which is broadcast over a police radio in order to justify an investigatory stop and subsequent arrest where the Commonwealth can establish either (1) that probable cause existed for issuing the bulletin or (2) that new information disclosed during the stop gave rise to probable cause for arrest." ***Commonwealth v. Prengle***, 437 A.2d 992, 994 (Pa. Super. 1981).

"Close spatial and temporal proximity of a suspect to the scene of a crime can also heighten a police officer's reasonable suspicion that a suspect is the perpetrator for whom the police are searching." ***Commonwealth v. Jackson***, 519 A.2d 427, 431 (Pa. Super. 1986). "Moreover, the time and place of an encounter may indicate that a person, conspicuous through their solitary presence at a late hour or desolate location, may be the object of a search." ***Id.*** (citations omitted).

Here, the suppression court found that Officer Adams had specific and articulable facts to believe Appellant was responsible for the armed robberies when he saw Appellant at 60th Street and Spruce Street with a ski mask around his neck and wearing clothing matching prior flash descriptions. *See* Trial Court Opinion, filed 6/2/17, at 6-7. During this investigatory detention, Appellant's admission that he was carrying a pellet gun and the discovery of the weapon and the cell phones provided probable cause to arrest Appellant. *Id.* at 7.

We agree with the court's conclusion that Officer Adams had reasonable suspicion to conduct an investigatory detention, which ripened into probable cause to detain Appellant after he informed the officer he had a weapon on him.

The totality of the circumstances included: (1) the fact of the area's high crime rate; (2) Officer Adams's nine years of experience working as a police officer in this same area; (3) Officer Adams's prior interactions with Appellant, including within the prison and inside Appellant's home where Officer Adams observed a weapon; (4) Officer Adams's awareness of the series of armed robberies in the vicinity and the numerous descriptions of the perpetrators from police reports, flash descriptions, and roll call; (5) Officer Adams's observation of Appellant standing alone on a dark corner in that area at 4:30 A.M., approximately three hours after the most recent armed robbery; (6) at that time Appellant matched the descriptions of clothing and appearance from

the earlier robberies and had a ski mask around his neck; (7) Officer Adams approached Appellant alone while his partner remained in the vehicle; (8) Officer Adams did not make any show of force with the police vehicle or use any police equipment; and (9) the content of Officer Adams's statements and questions to Appellant.

Given the totality of the circumstances, we conclude that Officer Adams had reasonable suspicion to conduct an investigatory stop of Appellant, which ripened into probably cause to arrest. Accordingly, we reject Appellant's first claim and conclude he is not entitled to relief.

In his second claim, Appellant argues that all physical evidence and his subsequent confessions must be suppressed because they constituted fruits of his unlawful arrest by Officer Adams. *See* Appellant's Brief at 29-31. As we have concluded that Officer Adams lawfully stopped Appellant, his related claim also must fail since we have rejected its premise.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/19