J-S22009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENGE NMN LEWIS JR. | : | |
| | : | |
| Appellant | : | No. 1272 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 1, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000167-2023

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY LAZARUS, P.J.:**FILED: NOVEMBER 20, 2025**

I respectfully dissent.  In my opinion, the majority incorrectly concludes that Officer McBride had the requisite reasonable suspicion to justify stopping Lewis.  Accordingly, I would find the stop illegal, suppress all evidence uncovered as a result of the stop and subsequent detention, vacate Lewis' judgment of sentence for his firearm convictions, and discharge him.

Here, Officer McBride stopped Lewis one-half hour after the suspect fled from the scene of the traffic stop and three-quarters of a mile from the earlier traffic stop.  The police radio description was of a black male of Lewis' approximate height, wearing either a dark pair of sweatpants or sweatshirt. Officer McBride did not testify that he personally observed Lewis demonstrate any suspicious behavior prior to the stop.  Critically, Officer McBride testified

_____

[*] Former Justice specially assigned to the Superior Court.

he needed other officers to come to his location to identify the suspect because he only remembered that the description stated the suspect was wearing gray sweatpants and that "when he radioed for the officers, [he] never got a description of what [the suspect] was wearing." N.T. Suppression Hearing, 1/10/24, at 38-39. Moreover, Officer McBride testified that he asked officers over the radio what color shoes the suspect had been wearing because "that would be a key identifier" that could easily let him know if he had the correct individual. *Id.* at 39. Taking all of this testimony, in toto, demonstrates that Officer McBride did not have the requisite reasonable suspicion, supported by articulable facts, to believe that Lewis "[wa]s committing or ha[d] committed a criminal offense." *Commonwealth v. Hicks*, 208 A.3d 916, 921 (Pa. 2019) (citation omitted). *See Commonwealth v. Berrios*, 263 A.2d 342 (Pa. 1970) (overly general description does not support *Terry*[1] stop and frisk in absence of suspicious behavior observed by investigating officer).

The majority concludes that "the whole of the [following] factors provided Officer McBride with sufficient information to justify a brief detention" of Lewis where he:

- matched the description provided by a known source listing the absconder's height, race, gender, and clothing;
- was located three-quarters of a mile from the scene;
- was spotted one-half hour after the crime; and
- was the only individual in the area.

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

Majority Memorandum, ----, at 9. Such details fall woefully short of the specificity required to justify a stop. **See Berrios**, **supra**[2] (stop of defendants, twenty minutes after shooting occurred and three blocks from shooting, based on generalized description that suspects were two black males in dark clothing and one Hispanic male in light clothing, insufficient to constitute reasonable suspicion to justify detention); **Commonwealth v. Hicks**, 253 A.2d 276, 278 (Pa. 1969) (officer lacked reasonable suspicion to stop defendant who was black, in his thirties, and wearing "a very light[-] colored coat, beige or white," where 911 call described suspect of crime committed forty-five minutes earlier as thirty-year-old black male with mustache wearing brown coat). **See also In the Interest of D.M.**, 727 A.2d 556, 561 (Pa. 1999) (Nigro, J., dissenting) ("Clearly, such a description, consisting merely of race and gender and literally applicable to any group of black males in the area, falls far short of providing a specific and articulable basis for a reasonable belief that D.M. and his companions were involved in the reported robbery.").

_____

[2] To the extent the majority concludes that this case is distinguishable from the facts of **Berrios** due to Lewis' locale being "consistent with flight," we disagree. N.T. Majority Memorandum, ---, at 12. Officer McBride testified that the original officers "lost" the suspect while he was fleeing from the traffic stop somewhere "northwest" of where Officer McBride was parked and, therefore, "he wasn't even heading in that direction when the pursuit was terminated." N.T. Suppression Hearing, 1/10/24, at 25. **See Commonwealth v. Jackson**, 519 A.2d 427, 431 (Pa. Super. 1986) ("Close spatial and temporal proximity of a suspect to the scene of a crime can also heighten a police officer's reasonable suspicion that a suspect is the perpetrator for whom the police are searching.").

Additionally, the Majority states that it was permissible for Officer McBride to "briefly detain [Lewis] to confirm his identity and 'maintain the status quo momentarily while obtaining more information . . . in light of the facts known to the officer at the time.'" Majority Memorandum, ---, at 13, citing **Commonwealth v. Jackson**, 302 A.3d 737, 748 (Pa. 2023) and **Adams v. Williams**, 407 U.S. 143 (1972) (recognizing **Terry** adopts intermediate response to arrest). What the majority fails to recognize, however, is that the **Terry**[3] Court presupposed that the officer believed the individual he stopped was suspicious. **See Adams v. Williams**, 407 U.S. 146, citing **Terry**, at 21-22 ("A brief stop of **a suspicious individual**, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.") (emphasis added). **See also**

_____

[3] In **Terry**, our High Court iterated that an officer was lawfully justified to take steps to investigate a defendant's **suspicious** behavior further when the officer **had already *observed*****:** "two men hover about a street corner for an extended period of time, at the end of which it becomes apparent that they are not waiting for anyone or anything; where those men pace alternately along an identical route, pausing to stare in the same store window roughly 24 times; where each completion of this route is followed immediately by a conference between the two men on the corner; where they are joined in one of these conferences by a third man who leaves swiftly; and where the two men finally follow the third and rejoin him a couple blocks away." **Id.** at 23 (italics added). As the Supreme Court correctly acknowledged under very different facts than in the instant case, "[i]t would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further." **Id.**

*Commonwealth v. Bryant*, 866 A.2d 1143, 1147 (Pa. Super. 2005) (officer possessed sufficient reasonable **suspicion** to conduct *Terry* stop "for the purpose of determining [defendant's] identity and maintaining the *status quo* while obtaining more information" where defendant was "running with his companions" in high crime area around corner from where officer heard firing of gunshots in early evening hours).

Here, Officer McBride not only failed to observe Lewis demonstrating any suspicious behavior, but he also acknowledged that he needed the officers who were involved in the original traffic stop to come to his location to identify whether Lewis fit the generic description of the suspect. These are not the facts that the Supreme Court envisioned would form the basis for a proper *Terry* stop. *See Hicks, supra* at 927 (warrantless seizure of person "require[s] an appropriate showing of **antecedent** justification") (emphasis added). *See also Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000) ("To maintain constitutional validity, an investigative detention must be supported by reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as it is necessary to confirm or dispel **such suspicion**.") (emphasis added).

While I agree that reasonable suspicion requires more than "a mere 'hunch' but 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause,'" *Jackson*, 302 A.3d at 748, the Majority's decision today runs afoul of an individual's constitutional protection against unlawful searches and seizures.

- 5 -

*Commonwealth v. Lovette*, 450 A.2d 975, 979 (Pa. 1982) ("[T]he *Terry* principle is an exception to the general rule requiring probable cause and must not be extended in such a fashion as to swallow the rule."). Because, under the totality of the circumstances, the facts that Officer McBride possessed at the time he detained Lewis lacked the specificity required to justify Lewis' detention or, more colloquially, to consider him "suspicious," I must dissent. *Jackson*, 519 A.2d at 430 ("The police need to have **identification information specific enough** to reasonably conclude that the party they are stopping is actually the person for whom they are searching.") (emphasis added). Accordingly, I would suppress Lewis' stop and all evidence flowing therefrom.